[No. C059703. Third Dist. Nov. 24, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRISON SCOTT, Defendant and Appellant.

Counsel

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, and Jeffrey D. Firestone, Deputy Attorney General, for Plaintiff and Respondent.

Opinion

BUTZ, J.—In 1998, defendant Harrison Scott was convicted of robbery (Pen. Code, § 211)[1] and carjacking (§ 215, subd. (a)) arising out of the same facts. Both of those convictions are alleged as prior strikes in the instant case, and defendant contends one of them *must* be stricken.

In *People v. Burgos* (2004) 117 Cal.App.4th 1209 [12 Cal.Rptr.3d 566] (*Burgos*), Division Two of the Court of Appeal, Second Appellate District, discussed this issue. We find the holding in *Burgos* difficult to discern. It can reasonably be read to state that in such cases one strike *must* be stricken, or that the connection between the two strikes is but one factor a trial court must consider in conducting a traditional *Romero* analysis (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]).

By applying the definition of a "strike" as provided by the three strikes law, and by closely hewing to *People v. Benson* (1998) 18 Cal.4th 24 [74 Cal.Rptr.2d 294, 954 P.2d 557] (*Benson*), we conclude that in such cases, the trial court is not compelled to strike a strike, but must consider the closeness of the two strikes as an additional circumstance in conducting a *Romero* analysis. Because the trial court in this case did so, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 8, 2005, several inmates at New Folsom Prison, including defendant, attacked another inmate, and a sharp object was found in defendant's pocket. Defendant was charged with assault with a deadly weapon on an inmate by a non-life prisoner (§ 4501) and possession of a sharp instrument by a prison inmate (§ 4502, subd. (a)).

Defendant made a pretrial *Romero* motion, arguing that his 1998 robbery and carjacking strikes arose out of his single act of robbing the victim of his

[1] Undesignated statutory references are to the Penal Code.

car, and it was unfair to treat that one act as two strikes. The People's opposition argued the trial court could strike a strike if, and only if, defendant fell outside the spirit of the three strikes law. The People's opposition also recited defendant's criminal history, including a juvenile record of robbery and assault with a deadly weapon, and an adult record including a prior in-prison stabbing (§ 4501), and many sustained discipline cases in prison, several involving violence.

The People's opposition to the *Romero* motion described the facts of the strikes as follows: "On July 03, 1997, . . . the victim . . . was carjacked at gunpoint. He reported to Los Angeles Police officers that he had been confronted by two males in a dark green Volkswagen Bug. The defendant, Harrison Scott, . . . approached him and pointed a rifle at him. [The victim] exited the vehicle and allowed Harrison Scott to take the vehicle. Inside the vehicle were numerous items belonging to the victim, including clothing."

At the pretrial *Romero* hearing, defense counsel agreed that the People's opposition to the *Romero* motion "[e]ssentially" accurately stated defendant's criminal history.

The trial court concluded that *Burgos* did not compel it to strike a strike, found defendant fell within the spirit of the three strikes law, and denied his *Romero* motion.

At trial, the jury rejected defendant's claim of self-defense. However, the jury acquitted defendant of assault by a non-life prisoner with a sharp instrument. The jury convicted defendant of possession by a prisoner of a sharp instrument and simple assault. (§§ 240, 4502, subd. (a).) The jury found the robbery and carjacking strikes true, although one of the strike verdict forms is missing from the clerk's transcript. (§§ 211, 215, 667, subds. (b)–(i), 1170.12.) To the extent defendant purports to challenge whether both strikes were proven, he forfeited the claim by failing to separately develop it under a heading. (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 502, fn. 5 [124 Cal.Rptr.2d 301]; Cal. Rules of Court, rule 8.204(a)(1)(B).) In any event, the jury was polled and it is clear it found both strikes true.

The probation report in this case describes the strikes as follows: "[O]n 7/3/97, at approximately 2220 hours, the victim parked his vehicle and got out. Another vehicle stopped nearby and [defendant] got out. [Defendant] approached the victim, pointed an assault rifle at him and demanded his car keys. The victim, fearing for his safety, gave [defendant] his keys, and [defendant] drove away in the victim's vehicle. The other vehicle also left the scene."

The abstract pertaining to the prior strikes shows the trial court imposed on "Lincoln Harrison Scott" the upper term of nine years for carjacking (§ 215,

subd. (a)), plus 10 years for a firearm enhancement (§ 12022.5, subd. (a)), and imposed but stayed (§ 654) an upper term sentence for robbery and an additional firearm enhancement.

Defense counsel renewed the *Romero* motion before sentencing, and objected to the description of the strikes in the probation report. The prosecutor argued those facts could show defendant committed two acts, one act of robbing the victim of his keys, and the other of robbing the victim of his vehicle.

The trial court overruled the objection to the probation report, but found it did not have adequate information to determine that two acts occurred, and declined to revisit the *Romero* ruling it had made. On appeal, the People mention the prosecutor's two-act theory, but do not defend it, and brief this appeal as if one act took place. For purposes of this appeal, we agree. (See *People v. Dominguez* (1995) 38 Cal.App.4th 410, 419–420 [45 Cal.Rptr.2d 153] (*Dominguez*) [carjacking and robbery " 'the same act' " where Dominguez demanded " 'everything [the victim] had' " and victim gave him jewelry and allowed him to take victim's van].)[2]

The trial court sentenced defendant as a three strikes offender to a state prison term of 25 years to life with the possibility of parole for possession of a sharp instrument by a prison inmate. Defendant timely appealed.[3]

## DISCUSSION

### I. Standard of Review

As explained in *People v. Carmony* (2004) 33 Cal.4th 367, 377–378 [14 Cal.Rptr.3d 880, 92 P.3d 369] (*Carmony*):

■ " '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat

---

[2] As we have explained before, the party seeking relief generally bears the burden to show entitlement to relief. (*People v. Lopez* (1997) 52 Cal.App.4th 233, 251 [60 Cal.Rptr.2d 511].) In making his *Romero* motion, defendant undertook the burden to show that a strike should be stricken. Thus, to the extent defendant wanted to show that his two strikes arose from the same act, he had the burden to provide *evidence* of that fact. Thus, gaps or ambiguities about the facts of his two strikes would normally cut against defendant. But the facts as stated in the People's opposition to the *Romero* motion and in the probation report did not present a significant factual dispute. As stated, consistent with the view of the parties on appeal, we proceed on the understanding that both strikes arose from one act: On July 3, 1997, defendant used a gun to rob and carjack one victim at one time.

[3] Codefendant Victor Dwayne Cornelius also timely appealed, but he later abandoned his appeal.

offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]

"Consistent with the language of and the legislative intent behind the three strikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.] [¶] . . . [¶]

". . . For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case."

## II.  Analysis

The trial court concluded it retained discretion to strike or not strike one of defendant's strikes, and declined to strike one because after reviewing his violent criminal record, the trial court concluded defendant fell within the spirit of the three strikes law. Defendant does not challenge that conclusion, but argues the trial court *had* to strike one strike. We disagree.

### A.  The Three Strikes Law

As section 1170.12, subdivision (b)(1) states, the three strikes law defines a "strike," in part, as follows:

"Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony

in this state. The determination of whether a prior conviction is a prior felony conviction for purposes of this section shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor. None of the following dispositions shall affect the determination that a prior conviction is a prior felony for purposes of this section:

"(A) The suspension of imposition of judgment or sentence.

"(B) The stay of execution of sentence.

"(C) The commitment . . . as a mentally disordered sex offender following a conviction of a felony.

"(D) The commitment to the California Rehabilitation Center . . . ."

■ Thus, the three strikes law itself defines those prior convictions that are considered strikes. Whether a conviction is a strike "is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor." (§ 1170.12, subd. (b)(1).)

■ Both robbery (§ 211) and carjacking (§ 215, subd. (a)) are enumerated strikes. (§§ 667.5, subd. (c)(9), (17), 1192.7, subd. (c)(19), (27).) Thus, absent any limitation external to the three strikes law, both of defendant's priors would be treated as strikes, because neither was converted to a misdemeanor automatically upon sentencing. (§ 1170.12, subd. (b)(1).)

■ In *Benson, supra,* 18 Cal.4th 24, our state Supreme Court held that a strike is a strike even if the sentence therefor was stayed under section 654: "In the present case, defendant received the benefit of section 654 when he was sentenced for the felonies he committed in 1979; *it was only when defendant reoffended after the enactment of the Three Strikes law that he faced the prolonged incarceration of which he now complains.* The Three Strikes law provided him with notice that he would be treated as a recidivist if he reoffended. [Citation.] He chose to ignore that notice and commit a subsequent felony." (*Benson,* at p. 35.)

However, *Benson* also stated that "a trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such action" (*Benson, supra,* 18 Cal.4th at p. 36), and made this observation in a footnote: "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are

some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Id.* at fn. 8.)

In *People v. Sanchez* (2001) 24 Cal.4th 983 [103 Cal.Rptr.2d 698, 16 P.3d 118] (*Sanchez*), overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228–1229 [45 Cal.Rptr.3d 353, 137 P.3d 184] (*Reed*), the California Supreme Court addressed a claim that it would be unfair to treat current second degree murder and gross vehicular manslaughter convictions arising out of the same act as two strikes in a future prosecution.

As the court stated in *Sanchez*: "We are not faced with that question in the present case, but we believe it is appropriate and prudent to note that in this court's decision in *Benson*, we observed that a trial court may strike a prior felony conviction under section 1385, and that we left open the possibility that 'there are some circumstances in which two prior felony convictions are so closely connected . . . that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.' " (*Sanchez, supra*, 24 Cal.4th at p. 993; see also *People v. Ortega* (2000) 84 Cal.App.4th 659, 668–669 [101 Cal.Rptr.2d 253].)

### B. The Offense of Carjacking

■ We turn now to the crime of carjacking. Section 215 defines "carjacking" as the taking by force or fear of a motor vehicle, with the intent to permanently *or* temporarily deprive the victim of the vehicle. (Stats. 1993, ch. 611, § 6, p. 3508, eff. Oct. 1, 1993.) This was part of a bill that contained an urgency clause as follows: "In order to protect the people of this state from the extreme danger posed by an increasing number of carjackings and to provide a level of punishment sufficient to deter the commission of these violent crimes, it is necessary that this act take effect immediately." (Stats. 1993, ch. 611, § 65, p. 3619.)

Carjacking is often a robbery in which a vehicle is taken. (§ 215, subd. (a).) Its sentencing triad is higher than for robbery. (Compare § 215, subd. (b) with § 213, subd. (a)(1)(B).) But a carjacking conviction can be based on the intent to permanently *or temporarily* deprive the victim of a car, whereas a robbery requires the intent to permanently deprive a person of property. (*Dominguez, supra*, 38 Cal.App.4th at pp. 417–419; see *People v. Ortega* (1998) 19 Cal.4th 686, 700 [80 Cal.Rptr.2d 489, 968 P.2d 48], overruled on another point in *Reed, supra*, 38 Cal.4th at pp. 1228–1229.) Because a person can commit a carjacking by forcibly taking a vehicle with

the intent to joyride, robbery is not a lesser included offense of carjacking. (*In re Travis W.* (2003) 107 Cal.App.4th 368, 373 [132 Cal.Rptr.2d 135] (*Travis W.*) ["Nevertheless, there is an undeniable measure of overlap between robbery and carjacking."]; *People v. Green* (1996) 50 Cal.App.4th 1076, 1083–1084 [58 Cal.Rptr.2d 259]; *Dominguez, supra*, 38 Cal.App.4th at p. 418.)

The difference in the required intent was no accident. One reason for creating the new offense of carjacking was that many " ' "gang carjackings are thrill[-]seeking thefts" ' " and it was difficult to prove intent to *permanently* deprive the victim of the car. (*Travis W., supra*, 107 Cal.App.4th at pp. 374–375, 377.)

Section 215 contains the following unique provision: "This section shall not be construed to supersede or affect Section 211. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211." (§ 215, subd. (c).)

### *C.* Burgos *and* Nguyen

The unique provision of section 215, subdivision (c) and footnote 8 of *Benson* converged in *Burgos*. Burgos had previously been convicted of attempted robbery and attempted carjacking, those convictions were alleged as strikes, and he argued that the two strikes should be treated as one because they arose from the "same act." (*Burgos, supra*, 117 Cal.App.4th at pp. 1211–1212 & fn. 3; see *Benson, supra*, 18 Cal.4th at p. 36, fn. 8.)

*Burgos* seems to hold that because Burgos's convictions stemmed from the *same act*, one strike *had to be stricken*: "In this appeal, [Burgos] contends that the trial court abused its discretion in refusing to strike one of his two prior strike convictions, because the two prior strike convictions arose from the same act. We agree." (*Burgos, supra*, 117 Cal.App.4th at p. 1211.)

"We now hold that the failure to strike one of the two priors convictions that arose from a single act constitutes an abuse of discretion." (*Burgos, supra*, 117 Cal.App.4th at p. 1214.)

"Here, appellant's two prior convictions, attempted carjacking and attempted robbery, were, in the language of *Benson*, 'so closely connected,' having arisen from the same single act, that failure to strike one of them must be deemed an abuse of discretion." (*Burgos, supra*, 117 Cal.App.4th at p. 1216.)

After discussing the unique sentencing limitation provided by section 215, subdivision (c), quoted above, *Burgos* stated: "While this provision does not refer to the use of the convictions as priors in a later prosecution such as the one before us, it reinforces our belief that infliction of punishment in this case based on both convictions constitutes an abuse of discretion." (*Burgos, supra,* 117 Cal.App.4th at p. 1216.)

The penultimate paragraph of *Burgos* begins, "Appellant's strike priors arose from a single criminal act. His criminal history aside from the strike convictions consisted of . . . ," and then *Burgos* makes what appears to be an ordinary *Romero* analysis, discussing Burgos's mild criminal history. (*Burgos, supra,* 117 Cal.App.4th at pp. 1216–1217.) But then, the last sentence of that paragraph states: "We conclude that, *in view of the particular offenses that constituted the two prior strike convictions in this case,* it was an abuse of discretion to fail to strike one of those convictions in furtherance of justice under [*Romero*] and section 1385." (*Ibid.,* italics added.)

In other words, *Burgos* seems to hold that the "same act" circumstance is dispositive, then seems to treat it as one factor in a *Romero* analysis, and then says the nature of "the particular offenses that constituted the two prior strike convictions in this case" is what *compels* striking one strike, again strongly indicating a rule that the "same act" circumstances *mandate* striking a strike in such cases. (*Burgos, supra,* 117 Cal.App.4th at pp. 1216–1217.)

This leaves the actual holding of *Burgos* doubtful, and has led to a divergence of views. Several treatises indicate that *Burgos* states a dispositive rule. (See Couzens & Bigelow, Cal. Three Strikes Sentencing (2d ed. 2008) pp. 3.9 to 3.11; 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2009 supp.) Punishment, § 357, p. 257; Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2009) § 37.33A, p. 1133; Menaster & Ricciardulli, 3 Strikes Manual (July 2009 supp.) pp. 12–13.) On the other hand, as mentioned by the prosecutor in this case, we are aware that some *unpublished*—and therefore *uncitable* (Cal. Rules of Court, rule 8.1115(a))—cases take the view that *Burgos* merely identified an additional factor a trial court must weigh in a *Romero* analysis.

The trial court noted the confusion within the *Burgos* opinion, properly declined to rely on any unpublished cases, and adopted the view that *Burgos* provided an additional factor to consider; namely, the closeness of the prior strikes *inter se,* in conducting a *Romero* analysis. The trial court then discussed defendant's violent criminal record, concluded that he fell within the spirit of the three strikes law, and declined to strike either of his prior strikes.

█ The trial court got it right: Whichever rule *Burgos* meant to announce, we conclude the "same act" circumstances posed by robbery and carjacking cases provide a factor for a trial court to consider, but do not *mandate* striking a strike.

Some of the confusion in *Burgos* may stem from its failure to discuss the *definition of a strike*: As stated, whether something is a strike "is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor." (§ 1170.12, subd. (b)(1).) This negates a broad reading of *Burgos*.

Further, although it was not viewed as dispositive, *Burgos* used the sentencing limitation provided by section 215, subdivision (c) to "reinforce[]" its conclusion. (*Burgos, supra,* 117 Cal.App.4th at p. 1216.) But *Benson* undermines this view, because the defendant was on notice that the three strikes law would treat both convictions as strikes, and therefore that he "would be treated as a recidivist if he reoffended." (*Benson, supra,* 18 Cal.4th at p. 35.) In *People v. Nguyen* (2009) 46 Cal.4th 1007 [95 Cal.Rptr.3d 615, 209 P.3d 946], the California Supreme Court recently upheld the use of juvenile adjudications as strikes, partly because such an adjudication puts the person on notice that, upon reoffense, she or he will be punished as a recidivist. (*Id.* at p. 1024 ["Sentence enhancement based on recidivism flows from the premise that the defendant's current criminal conduct is more serious because he or she previously was found to have committed criminal conduct and did not thereafter reform."].)

### D.   *Conclusion*

█ In short, defendant received the benefit of the sentencing limitation of section 215 when he was sentenced in 1998. (See *Benson, supra,* 18 Cal.4th at p. 35.) He is not being improperly "doubly punished" for robbery and carjacking, as he contends. He chose to reoffend, knowing that he had two prior strike convictions. He is not entitled to a vestigial benefit in *this case* from the section 215 sentencing limitation. All he was entitled to was consideration by the trial court of the closeness of the two strikes in determining whether, *in the exercise of discretion,* one should be stricken. The trial court considered that factor, but, in the exercise of its discretion, did not find that his violent record justified treating those two strikes—albeit arising from the same act—as one.

As stated, defendant does not challenge the trial court's exercise of discretion as such; that is, he does not contend that he falls *outside* the spirit of the three strikes law. (See *Carmony, supra,* 33 Cal.4th at pp. 375–378.)

Accordingly, we need not review that separate issue. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481] [point not developed is forfeited].)

## DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 10, 2010, S179182. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.