Filed 7/10/14

# IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, ) | |
| ) | |
| Plaintiff and Respondent, ) | S203744 |
| ) | |
| v. ) | Ct.App. 2/8 B231338 |
| ) | |
| DARLENE A. VARGAS, ) | Los Angeles County |
| ) | Super. Ct. No. KA085541 |
| Defendant and Appellant. ) | |
| _____ ) | |

We consider in this case whether two prior convictions arising out of a single act against a single victim can constitute two strikes under the Three Strikes law. We conclude they cannot.

## INTRODUCTION

The consequences in this state of repeated criminal conduct changed dramatically in 1994. First the Legislature,[1] and then the electorate,[2] introduced into this state's jurisprudence what is now known collectively as the Three Strikes law. Under that law, if a defendant reoffends after having suffered a first qualifying felony conviction, a doubled sentence is mandatory. If, after having suffered two qualifying felony convictions, an offender commits a third qualifying

---

[1] See Penal Code section 667, subdivisions (b)–(i). All statutory references are to the Penal Code.

[2] Section 1170.12 was enacted as part of Proposition 184 in 1994.

felony, the Three Strikes law presumes he or she is incorrigible and requires a life sentence. "Sentence enhancement based on recidivism flows from the premise that the defendant's current criminal conduct is more serious because he or she previously was found to have committed criminal conduct and did not thereafter reform." (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1024.) The typical third-strike situation thus involves a criminal offender who commits a qualifying felony after having been afforded two previous chances to reform his or her antisocial behavior, hence the law's descriptive baseball-related phrase, " 'Three Strikes and You're Out.' " (*People v. Hazelton* (1996) 14 Cal.4th 101, 104.)

Despite this paradigm, situations have occurred that have challenged the assumption that an offender has had two prior opportunities to reform. For example, in a case in which an offender's two previous qualifying felony convictions were for crimes so closely connected in their commission that they were tried in the same proceeding, we held that such convictions can nevertheless constitute two separate strikes because the Three Strikes law does not require that prior convictions, to qualify as strikes, be brought and tried separately. (*People v. Fuhrman* (1997) 16 Cal.4th 930.) Similarly, in a case in which the offender's previous two crimes could not be separately punished at the time they were adjudicated because they were committed during the same course of conduct (§ 654), we held such close factual and temporal connection did not prevent the trial court from later treating the two convictions as separate strikes when the accused reoffended. (*People v. Benson* (1998) 18 Cal.4th 24 (*Benson*).)

The instant case presents a more extreme situation: Defendant's two prior felony convictions—one for robbery and one for carjacking—were not only tried in the same proceeding and committed during the same course of criminal conduct, they were based on the same act, committed at the same time, against the same victim. As we explain, because neither the electorate (§ 1170.12) nor the

2

Legislature (§ 667, subds. (b)–(i)) could have intended that both such prior convictions would qualify as separate strikes under the Three Strikes law, treating them as separate strikes is inconsistent with the spirit of the Three Strikes law, and the trial court should have dismissed one of them and sentenced defendant as if she had only one, not two, qualifying strike convictions.

## FACTS

### A.  The Present Crimes

The facts of the present crimes have no bearing on the legal issue we resolve in this case and so may be stated briefly.  Petitioner Darlene Vargas and codefendant Oscar Velasquez illegally entered the Claremont home of victims Lynn Burrows and William Alves and stole various items, including a suitcase and a trash can.  Defendants were detained while prowling near another home in the same neighborhood; police found them in possession of both burglary tools and items taken from the Burrows/Alves home.  A witness later identified Velasquez and Vargas as the man and woman she saw walking near the victims' home with the suitcase and trash can.

Vargas was charged and convicted of first degree burglary (§ 459), grand theft (§ 487, subd. (a)), and conspiracy to commit grand theft (§ 182, subd. (a)(1)). In addition, the court sustained allegations that she had suffered a prior serious felony conviction (§ 667, subd. (a)), as well as two strikes within the meaning of the Three Strikes law:  a 1999 conviction for carjacking (§ 215) and another for robbery (§ 211).  Because her three present crimes (burglary, grand theft, conspiracy) were qualifying felonies under the version of the Three Strikes law

3

applicable at the time,[3] all three felonies were potentially subject to enhancement by her two alleged strikes, rendering her vulnerable to three consecutive terms of 25 years to life, or an aggregate prison term of 75 years to life.  She moved to dismiss the carjacking strike as to all counts.  The trial court granted the motion in part, dismissing the carjacking strike conviction as to the grand theft and conspiracy counts, but declining to dismiss the remaining conviction for burglary.

### B.  Appeal and Resentencing

Defendant appealed and also filed a petition for a writ of habeas corpus. The Court of Appeal denied relief on appeal but granted the habeas corpus petition in part, finding Vargas's defense counsel had been constitutionally ineffective for failing to place before the trial court the transcript of the preliminary hearing in the 1999 case.  Because the preliminary hearing transcript demonstrated Vargas's carjacking and robbery convictions were based on the same act of taking the victim's car by force, the appellate court concluded that "a different outcome was reasonably probable had the trial court known that a single act was involved [in 1999], . . . ."  Accordingly, it directed the trial court to conduct a new sentencing hearing after considering these additional facts.

On remand, the trial court denied defendant's motion to dismiss one of the 1999 prior convictions.  It noted that under our decision in *Benson*, *supra*, 18

---

**3**      Neither grand theft nor conspiracy to commit grand theft would now qualify for Three Strikes treatment under the version of the law as amended by the Three Strikes Reform Act of 2012, approved by the electorate as Proposition 36 on November 6, 2012.

Because defendant's burglary was of a home, it constitutes burglary in the first degree and is thus a "serious felony" pursuant to section 1192.7, subdivision (c)(18).  (See *People v. Cruz* (1996) 13 Cal.4th 764, 768.)  Accordingly, defendant is not entitled to have her Three Strikes sentence for burglary recalled under the terms of the new law.  (See § 1170.126, subd. (b).)

Cal.4th 24, "the central focus is not on the single act[,] . . . , it's on the defendant's status as a repeat felon" and observed, further, that defendant had received a benefit in 1999 when she was allowed to plead to a negotiated plea of only three years in prison for two serious felonies. Considering the totality of the circumstances, the trial court concluded defendant fell "squarely within the spirit of [Three] Strikes."

On appeal from the resentencing, defendant contended the trial court erred by declining to strike one of her prior convictions and sentence her as a two-strike offender. The Court of Appeal found no abuse of discretion and affirmed. We granted review.

## DISCUSSION

### A. Introduction

The issue we decide today is whether the trial court should have dismissed one of defendant's two prior felony convictions, alleged as strikes under the Three Strikes law, where both convictions were based on the same act. The question has two potential aspects: First, when faced with two prior strike convictions based on the same act, is the trial court *required* to dismiss one of them? Second, assuming the sentencing court retains discretion to dismiss a strike or not, did the trial court here, on the facts of this case, abuse its discretion by declining to dismiss one of defendant's two strikes? Because we find the first question dispositive, we need not continue and discuss whether the trial court abused its discretion.

### B. Analysis

Given the intent of both the Legislature and the drafters of the initiative version of the Three Strikes law to punish repeat criminal offenders severely, to drastically curtail a sentencing court's ability to reduce the severity of a sentence by eliminating alternatives to prison incarceration, and to limit an offender's

5

ability to reduce his or her sentence by earning credits, a question arose soon after enactment of the parallel Three Strikes schemes whether a trial court retained its traditional authority under section 1385 to dismiss an enhancement "in furtherance of justice."[4]  We settled the issue in *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530 (*Romero*), where we concluded "that section 1385[, subdivision] (a) does permit a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." Accordingly, the trial court below had the power under the law to grant defendant's motion and dismiss one of her two strike convictions.

In order to guide the lower courts when ruling on such motions to dismiss, *People v. Williams* (1998) 17 Cal.4th 148, 161, explained that when facing a motion to dismiss a strike allegation, the trial court "must consider whether, in light of *the nature and circumstances* of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, *the defendant may be deemed outside the scheme's spirit*, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (Italics added.)  We quoted this language with approval in *People v. Carmony* (2004) 33 Cal.4th 367, 377, and further explained that "[b]ecause the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls

---

**4**     Section 1385, subdivision (a), states:  "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.  The reasons for the dismissal must be set forth in an order entered upon the minutes.  No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

6

once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id.* at p. 378.)

That a case would be extraordinary in which an offender with two prior qualifying convictions would fall outside the spirit of the Three Strikes law does not mean such cases do not exist. We must decide whether defendant's case falls into this rare category, that is, where the facts—here, that defendant's two strikes were based on the same act—demonstrate that no reasonable person would disagree that defendant fell outside the spirit of the Three Strikes law. This court faced a related issue in *Benson*, *supra*, 18 Cal.4th 24, where the defendant had two prior strike convictions based on a single incident: after returning his neighbor's vacuum cleaner, which he had borrowed, he returned to her apartment ostensibly to retrieve his keys, whereupon he grabbed her, forced her to the floor, and eventually stabbed her multiple times. Based on this incident, he was convicted of residential burglary (§ 459) and assault with the intent to commit murder (former § 217). Because these two felonies were based on the same course of conduct, the trial court stayed one of the defendant's two prior convictions pursuant to section 654,[5] which expressly prohibits separate punishment for two crimes based on the same act, but has been interpreted to also preclude multiple punishment for two or more crimes occurring within the same course of conduct pursuant to a single intent. (See *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

---

[5] Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

When the *Benson* defendant reoffended 15 years later, his new crime was charged as his third strike under the Three Strikes law. He argued that because punishment had been stayed for one of his prior convictions, he had only one qualifying prior conviction under the Three Strikes law. This court disagreed, explaining that the prefatory phrase "[n]otwithstanding any other provision of law," as used in both the initiative and legislative versions of the Three Strikes law, meant that the statutory definition of a qualifying strike conviction was exclusive. Therefore, because the Three Strikes law states specifically that a "stay of execution of sentence" does not disqualify a conviction from being a strike, a stay under section 654 did not affect whether a felony conviction qualified under the Three Strikes law. (*Benson*, *supra*, 18 Cal.4th at pp. 28–31.) Thus, "the language of section 1170.12, subdivision (b)(1), unequivocally establishes that the electorate intended to qualify as separate strikes *each* prior conviction that a defendant incurred relating to the commission of a serious or violent felony, notwithstanding the circumstance that the trial court, in the earlier proceeding, may have stayed sentence on one or more of the serious or violent felonies under compulsion of the provisions of section 654." (*Benson*, *supra*, at p. 31.)

*Benson* also rejected the defendant's argument that permitting a conviction for which punishment was stayed to qualify as a strike would lead to " 'dramatic and harsh results' " (*Benson*, *supra,* 18 Cal.4th at p. 35), explaining that "[i]n the absence of any constitutional infirmity, . . . we are not at liberty to alter the intended effect of a statute on such grounds." (*Id.* at p. 36.) But as if presaging the current case, *Benson* continued: "It is worth noting . . . that our decision in *Romero*, *supra*, 13 Cal.4th 497, affirms that a trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such action." (*Ibid*.) The court expounded on this point in an accompanying footnote, adding:

8

"Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which *two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.*" (*Benson*, *supra*, p. 36, fn. 8, italics added.)

Thus, although *Benson* concerned only whether a conviction for which punishment was stayed qualified as a strike under the Three Strikes law, the opinion nonetheless suggests that a trial court should dismiss one of two prior strike convictions if they were based on the same act. We echoed this sentiment a few years later in *People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*),[6] underscoring *Benson*'s recognition that where two prior crimes are based on the same act, such a close connection might require a sentencing court to strike one of them pursuant to its authority under section 1385. (*Sanchez*, *supra*, at p. 993.)

The bench and bar took notice. (See, e.g., Menaster & Ricciardulli, 3 Strikes Manual (July 2009 supp.) p. 12 [referring to *Benson*'s "Famous Footnote 8"].) The first published appellate decision to address the issue was *People v. Burgos* (2004) 117 Cal.App.4th 1209 (*Burgos*). In *Burgos*, the jury convicted the defendant of two qualifying felonies and found he had suffered two strike convictions: one for attempted robbery and one for attempted carjacking, both in April 1999. The defendant moved to dismiss one of his strike convictions on the ground that they were based on the same act of forcibly attempting to take

---

**6** *Sanchez* was overruled on an unrelated point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228.

9

the victim's car. The trial court denied the motion and sentenced him under the Three Strikes law to consecutive sentences of 25 years to life in prison for his two current felonies.

On appeal, the defendant argued the trial court should have dismissed one of his two strike convictions. The *Burgos* court, relying on *Benson*, *supra*, 18 Cal.4th 24, and *Sanchez*, *supra*, 24 Cal.4th 983, agreed. *Burgos* explained that the defendant's prior felony convictions were, in *Benson*'s language, " 'so closely connected,' having arisen from the same single act, that the failure to strike one of them must be deemed an abuse of discretion." (*Burgos*, *supra*, 117 Cal.App.4th at p. 1216.) *Burgos* noted further that (1) the carjacking statute specifically precludes double punishment for both carjacking and robbery based on the same act (§ 215, subd. (c)); (2) the defendant's criminal history was not particularly severe or extensive, and his current offenses were not "the worst of crimes" (*Burgos*, *supra*, at p. 1216); and (3) the defendant's maximum two-strike sentence—20 years in prison—was itself quite severe (*ibid*.). Based on all these factors, the *Burgos* court concluded the trial court erred in failing to dismiss one of the strikes.

Five years later, the issue again arose in *People v. Scott* (2009) 179 Cal.App.4th 920 (*Scott*). In *Scott*, a jury convicted the defendant of two felonies—possession by a prisoner of a sharp instrument and simple assault (§§ 4502, subd. (a), 240)[7]—and found two strike allegations true. He moved to

---

[7] Although many types of assaultive crimes qualify for treatment under the Three Strikes law, simple assault not involving deadly weapons, great bodily injury, or specific victims such as peace officers or firefighters, does not. The defendant in *Scott* was thus found to have committed only one felony that qualified under the Three Strikes law: possession by a prisoner of a sharp instrument (§ 4502, subd. (a)).

dismiss one of his two prior strike convictions claiming, as here, that his prior convictions (for robbery and carjacking) arose from the same act of forcibly taking the victim's car. The trial court denied the motion and sentenced him to 25 years to life in prison. On appeal, the *Scott* court declined to follow *Burgos*, finding the basis of its holding "difficult to discern. It can reasonably be read to state that in such cases one strike *must* be stricken, or that the connection between the two strikes is but one factor a trial court must consider in conducting a traditional *Romero* analysis." (*Scott*, *supra*, at p. 923, citing *Romero, supra,* 13 Cal.4th 497.) After noting the confusion engendered by this lack of clarity, the *Scott* court concluded that "the 'same act' circumstances posed by robbery and carjacking cases provide a factor for a trial court to consider, but do not *mandate* striking a strike." (*Scott*, *supra*, at p. 931.) Because the trial court had applied that line of reasoning and did not abuse its discretion, the *Scott* court affirmed the judgment. The Court of Appeal in the instant case followed *Scott*.

The *Scott* court reasonably characterized the rationale in *Burgos* as unclear, for if a trial court must always dismiss one of two strikes when they are based on the same act, then the other considerations discussed by *Burgos* (such as the offender's past criminal record, and the length and adequacy of a possible two-strike sentence), would be irrelevant to the analysis. But although *Scott* references *Benson*'s "Famous Footnote 8" and its endorsement in *Sanchez* (*Scott*, *supra*, 179 Cal.App.4th at pp. 927–928), it rejected the footnote's clear import, concluding that the circumstance a robbery and carjacking arose out of the same act is only one factor for a trial court to consider, not a reason categorically to dismiss a strike (*id*. at p. 931).

*Benson* and *Sanchez* necessarily spoke of the "same act" issue hypothetically, as in neither case was the defendant before the court facing two separate strikes from two prior convictions based on a single criminal act. Indeed,

11

in *Sanchez*, no question of *prior* convictions was presented at all: The defendant was *presently* convicted of both murder and gross vehicular manslaughter while intoxicated and argued that in a hypothetical future prosecution, "he still could be subject to enhanced punishment under the 'Three Strikes' law [citation], because he could be treated as having two strikes on the basis of the two convictions." (*Sanchez*, *supra*, 24 Cal.4th at p. 993.)

In the instant case the issue is not hypothetical. Defendant was convicted in 1999 of two different crimes (robbery and carjacking) that were based on her commission of the same act (forcibly taking the victim's car), and the trial court used both convictions to sentence her to the ultimate three-strike term of 25 years to life in prison. Faced for the first time with the exact situation mentioned in *Benson*'s "Famous Footnote 8" (Menaster & Ricciardulli, 3 Strikes Manual, *supra*, at p. 12), and later endorsed in *Sanchez*), we adhere to the views expressed in those cases and hold that, on these facts, the trial court was required to dismiss one of defendant's two prior strike convictions.

We reach this conclusion because, as *Benson* and *Sanchez* recognized, the trial court's failure in these circumstances to dismiss one of defendant's two prior strike convictions, and instead to treat her as a third-strike offender, was inconsistent with the intent underlying both the legislative and initiative versions of the Three Strikes law. (See *People v. Garcia* (2001) 25 Cal.4th 744, 756–757 [" 'As with any other statute, our task in construing a provision of the Three Strikes law "is to ascertain and effectuate legislative intent." ' "].)

The initiative version of the Three Strikes law came into being when 1994's Proposition 184 was passed by the voters. As the ballot argument in favor of that initiative explained: "Here's how it works: [¶] Strike One: One serious/violent felony serves as a first strike toward a stiffer prison term. [¶] Strike Two: second felony conviction with one prior serious/violent felony, DOUBLES the base

12

sentence for the conviction.  Any additional enhancements under existing law, including those for prior convictions, are then added.  [¶]  Strike Three:  A third felony conviction, with two serious/violent prior felonies, TRIPLES the base sentence or imposes 25 years to life, whichever is greater."  (Ballot Pamp., Gen. Elec. (Nov. 8, 1994), argument in favor of Prop. 184, p. 36 (Ballot Pamphlet); see generally, *Romero*, *supra*, 13 Cal.4th at p. 528 [ballot arguments of Three Strikes initiative is evidence of voters' intent].)

Given this information, the voting public would reasonably have understood the "Three Strikes" baseball metaphor to mean that a person would have three chances—three swings of the bat, if you will—before the harshest penalty could be imposed.  The public also would have understood that no one can be called for two strikes on just one swing.  Permitting the trial court below to treat defendant's 1999 robbery and carjacking convictions as separate strikes— despite the fact they were based on a single criminal act—would do just that, and thus contravene the voter's clear understanding of how the Three Strikes law was intended to work.  Given the obvious twinning of the language used in the legislative version of the Three Strikes law, we discern no different intent with that version of the law.

We have explained that when ruling on a defendant's *Romero* motion (*Romero*, *supra*, 13 Cal.4th 497), trial courts should consider, among other things, the nature and circumstances of the prior convictions and whether the defendant falls outside the spirit of the Three Strikes law.  (See *People v. Carmony*, *supra*, 33 Cal.4th at p. 377; *People v. Williams, supra,* 17 Cal.4th at p. 161.)  In this case, the nature and circumstances of defendant's convictions show she committed just one criminal act, not two.  Nevertheless, the Attorney General argues that the "electorate may deem offenders who have simultaneously violated more than one criminal statute to pose a qualitatively higher risk to public safety than those who

have not. This is because such offenders invade more than one societal interest that the Legislature has designated for distinct protection by the enactment of more than one statute." We would agree had the offender committed more than one act, whether separately or during a continuous course of conduct, as in *Benson*, *supra*, 18 Cal.4th 24. As we stated in *Benson*, "the electorate and the Legislature rationally could—and did—conclude that a person who committed additional violence in the course of a prior serious felony (e.g., shooting or pistol-whipping a victim during a robbery, or assaulting a victim during a burglary) should be treated more harshly than an individual who committed the same initial felony, but whose criminal conduct did not include such additional violence." (*Id*. at p. 35.) But where, as here, an offender committed but a single act, we disagree she poses a greater risk to society merely because the Legislature has chosen to criminalize the act in different ways. The Legislature is free to criminalize an act in multiple ways, but that it has done so does not of itself make an offender more blameworthy, or more dangerous, within the meaning of the Three Strikes law.[8]

Similarly, logic demonstrates that defendant falls outside the spirit of the Three Strikes law. In requiring severe punishment the Three Strikes law responded to a belief that prior law contained too many loopholes favoring criminals, and that judges exercised too much discretion in reducing an offender's overall punishment. When these loopholes and discretion were added together, the perception was that serious and violent criminals who committed multiple

---

[8] Although the Three Strikes law provides that it applies "[n]otwithstanding any other provision of law" (§§ 667, subd. (c), 1170.12, subd. (a)), and we have interpreted that phrase broadly to effectuate the intent to the law, to interpret this catchall phrase so broadly as to permit the artificial inflation of the number of qualifying strikes in this case from one to two is unjustified. To do so would essentially recognize no limit at all to the "[n]otwithstanding any other provision of law" proviso.

crimes were allowed to escape their just desserts. (Ballot Pamp., *supra,* rebuttal to argument against Prop. 184, p. 37 ["soft-on-crime judges, politicians, defense lawyers and probation officers care more about violent felons than they do victims. They spend all of their time looking for loopholes to get rapists, child molesters and murderers out on probation, early parole, or off the hook altogether."]) Defendant falls outside of these concerns because the law prescribes the just desserts of a *two*-strike offender should be a doubled sentence, not a tripled, or a 25-years-to-life, term. Unlike those rightfully subject to a third-strike sentence, defendant has had only two swings of the bat. Under these circumstances, the law directs that she should have her sentence doubled, itself a serious penalty, as well as suffer all the other attendant Three Strike law disabilities imposed on her. (For example, offenders subject to the law have reduced opportunities for earning conduct credit or obtaining diversion for drug addiction, two options that seem particularly relevant to someone in defendant's circumstances.) Treating her more harshly than that—i.e., as a third-strike offender—when she has committed but one prior qualifying act, upsets this tiered penalty structure, skipping the second step.

Although not dispositive here, were more evidence needed to demonstrate the Legislature intended the forcible theft of a victim's car cannot be considered two different crimes, we need look no further than the actual terms of the carjacking statute itself. Section 215, subdivision (c), provides that a person can be charged with both robbery and carjacking based on the same incident, but no defendant may be punished for both crimes if based on the "same act."[9] This

---

[9] Section 215, subdivision (c), states: "This section shall not be construed to supersede or affect Section 211. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this

*(footnote continued on next page)*

prohibition on doubling punishment is not uncommon (see, e.g., § 496, subd. (a) ["no person may be convicted [of] both [receiving stolen property] and of the theft of the same property"]), and reflects the Legislature's assessment of the relative moral blameworthiness and danger to society of such offenders.

That *Benson* placed primary emphasis on the fact of each conviction, and not on the number of opportunities an offender had to reform, does not change the analysis. *Benson* admittedly reasoned that " 'the Legislature and the voters through the initiative process clearly intended that *each conviction* for a serious or violent felony counts as a prior conviction for sentencing purposes under the Three Strikes law, even where the convictions were based upon conduct against a single victim committed at the same time with a single intent, and where pursuant to section 654 the defendant was punished for only a single crime.' " (*Benson*, *supra*, 18 Cal.4th at p. 30, italics added.) But as noted, *Benson* involved multiple criminal *acts* (albeit committed in a single course of conduct) and not, as here, multiple criminal *convictions* stemming from the commission of a single act. *Benson* itself recognized this distinction in its "Famous Footnote 8" (Menaster & Ricciardulli, 3 Strikes Manual, *supra*, at p. 12), by observing that where multiple convictions stem from the same act, they may be so closely connected that treating them as separate strikes would be contrary to the spirit of the Three Strikes law. Although *Benson* focused on the mere existence of prior convictions, its analysis must be read with this footnote in mind.

---

*(footnote continued from previous page)*

section and Section 211 for the same act which constitutes a violation of both this section and Section 211."

16

The Attorney General argues the terms of the Three Strikes law itself suggest the Legislature (and the framers of the initiative version of the law) considered the effect of two crimes stemming from one act, at least as it affects current convictions, suggesting both of defendant's prior convictions can be separate strikes. Thus, section 1170.12, subdivision (a)(6), provides, "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section." Section 667, subdivision (c)(6), says the same thing. The negative implication of this provision is that if two or more crimes *are* committed on the same occasion, and arise from the same set of facts, the trial court need not sentence the counts consecutively. The Attorney General argues that because the Legislature addressed the "same act" circumstance in the context of current convictions, but included no similar language addressing prior convictions, we should presume the omission of parallel language by the Legislature and, presumably, the electorate, was intentional and purposeful. (See *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [" 'We must assume that the Legislature knew how to create an exception if it wished to do so' "].) This suggested inference of legislative intent, leaping from how courts should consider current crimes to how courts should view prior convictions, is too weak to overcome the plain meaning of the Three Strikes scheme that one may not commit but two criminal acts (here, forcibly taking a victim's car in 1999, burglarizing a house in 2008) yet be assessed three strikes. Indeed, we might also observe the Legislature knows how to impose a life term on fewer than three convictions, but has not done so here. (See § 667.61 [One Strike law for certain sex offenders].)

CONCLUSION

We conclude this is one of the extraordinary cases (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378) in which the nature and circumstances of defendant's prior strike convictions demonstrate the trial court was required to dismiss one of them because failure to do so would be inconsistent with the spirit of the Three Strikes law.  Accordingly, the judgment is vacated and the case ordered remanded to the trial court for resentencing, consistent with the views expressed above.[10]

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**O'ROURKE, J.**\*

---

[10]  To the extent *People v. Scott*, *supra*, 179 Cal.App.4th 920, is inconsistent with this decision, it is disapproved.

\*  Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Vargas

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 206 Cal.App.4th 971
**Rehearing Granted**

_____

**Opinion No.** S203744
**Date Filed:** July 10, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Bruce F. Marrs

_____

**Counsel:**

Melanie K. Dorian, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Taylor Nguyen, David Zarmi, Lawrence M. Daniels, Noah P. Hill and Kimara A. Aarons, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Melanie K. Dorian
P.O. Box 5006
Glendale, CA  91221-5006
(818) 241-5837

Kimara A. Aarons
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2270