Filed 9/9/15  P. v. Rudd CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>RONALD RAY RUDD,<br><br>　　　　Defendant and Appellant. | F068434<br><br>(Fresno Super. Ct. No. F12909339)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan Conklin, Judge.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Franson, J.

## INTRODUCTION

Appellant/defendant Ronald Ray Rudd, committed to Coalinga State Hospital, was found in possession of an external drive connected to his television, which contained multiple child pornography videos. After a bench trial, he was convicted of felony possession or control of child pornography (Pen. Code, § 311.11, subd. (b)),[1] with three prior strike convictions. He was sentenced to the third strike term of 25 years to life.

On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Defendant has filed a letter brief and requests this court address certain issues. We affirm.

## FACTS

On March 21, 2012, defendant was a patient at Coalinga State Hospital. He was housed in a four-person room which was divided by partitions. Defendant lived in the front right section of the room.

Around 7:00 p.m., Denise Martin, a psychiatric technician, advised another patient to take his medication. The patient told Martin to look at the television on the right side when she entered the room where defendant was housed. Martin went to the room and saw defendant lying on his bed. He was facing the television. Martin looked at the television, and it was showing a child performing an act of oral copulation on an adult. Martin left the room and called for another staff member.

Martin and a coworker entered defendant's portion of the room. Martin believed defendant was watching a pornographic DVD, and she told defendant they needed the DVD. Defendant was unresponsive and might have been asleep. Martin repeated the request. Defendant said, "No. I just need to erase it. It is not a DVD." Martin repeatedly demanded defendant produce the DVD. Defendant finally turned off a small

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

black box that was attached to the television. He disconnected the cord from the television, and handed the device to Martin's coworker, who gave it to Martin. Martin went to the nurse's station and placed the device in a clear plastic bag.

Around 7:30 p.m., Officer Phillip Wikler responded to the nurse's station and received the device from Martin. The device was identified as a black Toshiba external hard drive.

Officer Wikler contacted defendant in his room and asked for permission to search it. Defendant agreed. Wikler did not find any contraband. Defendant "declared that he wanted to tell us everything." Wikler asked defendant if he would speak with him in an adjoining conference room, and defendant agreed.

Officer Wikler and defendant went into the conference room, and the hallway door remained open. Wikler advised defendant that he could end the conversation and leave at any time. Wikler asked defendant if the child pornography on the device belonged to him, referring to the external drive seized from his room. Defendant said yes.

Thereafter, Officer Wikler advised defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Defendant waived his rights and continued to answer questions. Wikler was holding the external drive, and asked: "Is this yours?" Defendant again said yes. Wikler asked defendant what was on the drive. Defendant said there were some movies and child pornography. Defendant offered a detailed description of the child pornography that was on the device. Defendant said he received the device with the child pornography on March 15, 2012, and watched the films until they were removed from his possession. Defendant also said he felt he was being ignored and overlooked by the hospital staff, and he was desperate for attention. Defendant said he obtained the child pornography to get some help from the staff. Wikler gave the external drive to Officer Barraza, who booked it into the evidence locker.

On March 23, 2012, Sergeant Jerry Duvall conducted a tape-recorded interview with defendant and again advised him of the *Miranda* warnings. Defendant agreed to

answer questions. Duvall advised defendant about the investigation and asked him what happened. Defendant said he walked around the hallways and asked other patients for child pornography. Jerome Golden, another patient, agreed to get some for him. A third patient delivered the external drive to defendant. Defendant was able to watch the contents of the drive by connecting it to his television through a video player. Defendant said there were at least 12 videos on the drive. Defendant described the contents in detail and said the films depicted very young boys performing particular sexual acts on adult males. Defendant said that when the staff entered his room and saw the videos, he had fallen asleep in front of the television.

In June 2012, Sergeant Duvall retrieved the external drive from the evidence locker and conducted a forensic examination of its contents. The device contained 15 separate movies. Duvall determined that 14 of the movies consisted of child pornography, and one movie might have been child pornography. Duvall saw images consistent with defendant's description of the contents. Duvall testified that contraband videos are often exchanged among patients at the hospital. When Duvall watched defendant's external drive, he recognized at least three of the videos because he found the same contraband during investigations involving other patients at the hospital.

Using secure software, Sergeant Duvall and the evidence technician created exhibit No. 1, a CD that was an identical copy of the entire contents of the external hard drive. At defendant's trial, the parties stipulated to the court that exhibit No. 1 contained child pornography; the external drive seized from defendant was not introduced into evidence. Duvall testified he had not watched exhibit No. 1 since it was created by the evidence technician. During a break in his testimony, Duvall watched the CD and confirmed it contained the same 15 videos that he found on defendant's drive.

4.

**Procedural History**

On November 12, 2013, a first amended information was filed which charged defendant with one count of felony possession or control of child pornography with three prior strike convictions.

On the same day, defendant waived a jury trial and a bench trial commenced. The court found defendant guilty and the three prior strike convictions true.

**Defendant's Prior Convictions**

Defendant's prior convictions were addressed in the probation report and the prosecution's sentencing statement. In 1972, defendant (born 1951) was convicted in San Diego of misdemeanor offenses of committing a lewd act on a child (§ 288) and oral copulation on a minor (§ 288, subd. (a)). In 1973 and 1974, he was committed to Atascadero State Hospital as a Mentally Disordered Sex Offender (MDSO).

In 1978, defendant was charged with felony offenses of committing a lewd act on a child and sodomy. The offenses occurred when defendant placed an advertisement in a Long Beach newspaper as a babysitter. Defendant was hired by the parents of a five-year-old boy. The parents later discovered defendant had sexually molested the child on multiple occasions. Defendant was again committed to Atascadero as an MDSO.

Defendant's prior strikes were based on three felony convictions for committing a lewd act upon a child under the age of 14 years in 1989 (§ 288, subd. (a)). The offenses occurred when defendant lived in a van near a park. The victim was a six-year-old boy who went to the park to escape his abusive stepfather. Defendant was introduced to the victim by the codefendant. For a two-month period, defendant committed multiple acts of oral copulation and sodomy on the victim, and took pictures of the victim when he was nude. Defendant and the codefendant also molested the victim at the same time. The victim's mother learned of the molestations, took the victim to the hospital, and he was diagnosed with a sexually transmitted disease. Defendant was charged with six counts of

violating section 288, subdivision (a). He pleaded guilty to three counts, admitted a prior prison term enhancement, and was sentenced to 15 years in prison.

After completing his sentence, defendant was transferred to Atascadero in 1986 where proceedings were instituted pursuant to former Welfare and Institutions Code section 6610, and he was committed as a sexually violent predator. He was later moved to Coalinga.

Defendant was 62 years old at the time of this trial. He reported he had high blood pressure and seizures, and he used a wheelchair because of arthritis in his knees.

## Motion to Dismiss Prior Strikes

After defendant was convicted in this case, he filed a request for the court to dismiss his three prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and for imposition of a determinate sentence. The motion asserted that the current offense was not serious or violent, he acknowledged wrongdoing at an early stage, he cooperated with officers, and his three prior strike convictions were from a single case that occurred 24 years ago. Defendant noted his age, poor health, and that he was confined to a wheelchair. Defendant conceded he did not have any outside support system and requested the court return him to Coalinga State Hospital under a civil commitment.

The prosecutor filed opposition and cited defendant's lengthy record of victimizing children, which began in 1973 and continued while he was committed to Coalinga State Hospital. The prosecutor argued that the court should not dismiss defendant's prior strike convictions because of his history of taking advantage of and victimizing children, and actively seeking out child pornography while housed at the state hospital. The prosecutor noted the child pornography films in defendant's possession depicted the same or similar acts as those for which he was convicted in 1989.

**Sentencing Hearing**

On November 22, 2013, the court conducted the sentencing hearing. The prosecutor stated defendant was committed to the state hospital after he served his sentence for the prior strike convictions, and he had never been out of custody. Nevertheless, defendant still found a way to exploit children by obtaining several videos of child pornography, and the indeterminate third strike term was the best way to ensure he did not pose a threat to children in the future.

Defense counsel urged the court to dismiss the prior strike convictions, and asserted defendant would likely be sent back to the state hospital if he received a determinate term. The prosecutor disagreed and said defendant would be sent to state prison even if he received a determinate term. If he came up for parole, he would be evaluated as a sexually violent predator, petition for release, and again pose a threat to children.

The court denied defendant's request to dismiss the prior strike convictions, and sentenced him to 25 years to life. The court noted that while it had discretion to dismiss the prior strikes, it lacked discretion to commit defendant to the state hospital. The court followed the probation report's recommendation for custody credits: defendant was held in jail from March 21, 2012, to November 22, 2013, and earned 612 actual days and 612 days of credit, for a total of 1,224 days.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on August 21, 2014, we invited defendant to submit additional briefing. On August 29, 2014, defendant filed a letter brief which raises several issues.

First, defendant apparently challenges the sufficiency of the evidence to support his conviction and asserts he was not facing the television, and he was asleep, when

7.

Martin entered his room and saw the child pornography on the television. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Defendant's conviction is supported by overwhelming evidence given his repeated admissions to the officers about how he sought and obtained the child pornography from another patient, attached the external drive to his television, and repeatedly watched the videos until the device was seized from him. He offered detailed descriptions of the contents of the drive.

Next, defendant asserts that the external hard drive "went from 9 to 15" videos after he turned it over to the officers, and "I do not know where the other [videos] came from." This argument is also refuted by his admissions to the officers: When he readily explained that the device contained child pornography, described the videos in detail, and said there were at least 12 videos on the external drive. Officer Duvall determined the drive contained 15 videos, 14 movies consisted of child pornography, and one movie might have been child pornography. Duvall saw images consistent with defendant's description of the contents.

Defendant also complains about the court's calculation of custody credits, and contends he should receive more credits because he has continuously been in custody since 1989. "[S]ection 2900.5 provides that a convicted person shall receive credit against his sentence for all days spent in custody, including presentence custody [citation], but '*only* where the custody to be credited is attributable to proceedings related to the *same conduct* for which the defendant has been convicted' [citation]. The statute's application is clear when the conduct that led to the conviction and sentence was the sole cause of the custody to be credited." (*People v. Bruner* (1995) 9 Cal.4th 1178, 1180,

italics added in original.) According to the probation report, defendant was held in jail after he was arrested for possession of the child pornography at the state hospital. The court properly calculated his custody credits based on that presentence period. He was not entitled to any credits for the period prior to his arrest.

Finally, defendant questions why the court found he had three prior strike convictions because he has only been to prison twice, served his time, and then sent to the state hospital. As set forth above, defendant's prior strike convictions were based on the 1989 case where he repeatedly molested the child in the park on multiple occasions over a lengthy period of time. He was originally charged with six counts of violating section 288, subdivision (a), and entered into a plea agreement for three counts. The facts of the prior case strongly imply that he committed multiple sexual assault offenses against the victim at different times. The "Three Strikes" law does not require prior strike convictions be brought and tried separately. Defendant's three prior strike convictions were not based on the same act, committed at the same time and against the same victim, and the court did not abuse its discretion when it denied his motion to dismiss the strikes. (Cf. *People v. Vargas* (2014) 59 Cal.4th 635, 638–639.)

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

**<u>DISPOSITION</u>**

The judgment is affirmed.