Filed 10/17/14  P. v. Anduja CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSHUA DANIEL ANDUJA,<br><br>    Defendant and Appellant. | H040072<br>(Santa Clara County<br>Super. Ct. No. C1236021) |

After appellant Joshua Anduja pleaded no contest to possession of a controlled substance for sale, he requested dismissal of a prior "strike" allegation pursuant to Penal Code section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.  The court denied the request.  On appeal, he contends that the court misunderstood the scope of its discretion and abused its discretion, by mischaracterizing his criminal history and failing to give appropriate weight to his mental illness and rehabilitation efforts.  We find no error, however, and therefore must affirm the judgment.

### Background

Appellant was charged by information with possession of a controlled substance (methamphetamine) for sale, in violation of Health and Safety Code section 11378.  The information further alleged a prior "strike" conviction (Pen. Code, § 667, subds (b)-(i)) for assault with a deadly weapon, and one conviction for possession of stolen property resulting in a prison term (Pen. Code, § 496, subd. (a); 667.5, subd. (b).

On December 6, 2012, appellant pleaded no contest to the single count and admitted the prior-conviction allegations, with the understanding that his indicated sentence would be a maximum of 32 months in prison (the mitigated term of 16 months, doubled as a result of the prior strike conviction).

On April 2, 2013, appellant filed a request for the court to exercise its discretion to dismiss the prior strike allegation pursuant to Penal Code section 1385,[1] as authorized by *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530 (*Romero*).  On July 31, 2013, after receiving written argument and hearing the matter on two successive occasions, the court denied the *Romero* request and sentenced defendant to the indicated prison term of 32 months.  This appeal followed.

*Discussion*

In *Romero*, our Supreme Court held that in cases brought under the Three Strikes law a trial court retains the discretion under section 1385 to dismiss a prior strike conviction "in furtherance of justice."[2]  A "defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385," but a defendant has "the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376, quoting *Rockwell v. Superior Court* (1976) 18 Cal.3d 420, 441.)  However, the court in *Romero* emphasized that "[a] court's discretion to strike prior felony conviction allegations in furtherance of

---

[1]  All further statutory references are to the Penal Code.

[2]  Section 1385, subdivision (a), states: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

2

justice is limited.  Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse." (*Romero*, *supra*, 13 Cal.3d at p. 530.)

In *People v. Williams* (1998) 17 Cal.4th 148, 161 and again recently, in *People v. Vargas* (2014) 59 Cal.4th 635, 641, the court explained that "when facing a motion to dismiss a strike allegation, the trial court 'must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' . . . We quoted this language with approval in *People v. Carmony* (2004) 33 Cal.4th 367, 377, and further explained that '[b]ecause the circumstances must be "extraordinary  . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack" [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.' (*Id*. at p. 378.)" (*People v. Vargas*, *supra*, at p. 641, italics omitted.)  Thus, the law creates "a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)  The "rare" exceptions in which a defendant falls outside the spirit of the Three Strikes law include those in which the defendant has two strikes that are based on a single act.  (*People v. Vargas*, *supra*, at p. 642.)

The granting of a *Romero* motion is "subject to review for abuse of discretion. This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts. [Citations.]" (*People v. Williams*, *supra*, 17 Cal.4th at p. 162; see also *People v. Garcia*

3

(1999) 20 Cal.4th 490, 503.)  This abuse of discretion standard also applies to appellate review of the *denial* of *Romero* motions.  (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 374–376.)  It is the defendant's burden as the party attacking the sentencing decision to show that it was arbitrary or irrational, and, absent such showing, there is a presumption that the court " ' "acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.]" (*Id.* at p. 377.)  Such a discretionary decision " ' "will not be reversed merely because reasonable people might disagree." ' " (*Ibid.*)

In his motion appellant argued that he had been participating in a six-month rehabilitation program through the Salvation Army and was anticipating his graduation and employment thereafter.  He pointed out that his current offense was not violent and obliquely suggested that the motion could be granted because his sentence would otherwise be long.  In their opposition the People maintained that there were "no legitimate grounds" for granting his request, because appellant's current crime and history placed him "squarely" within the spirit of the Three Strikes law.

The matter was continued twice until June 28, 2013, giving the court an opportunity to read both parties' arguments, the probation report, personal letters, treatment status reports, and two reports from the Salvation Army program.  By this time appellant had been involuntarily discharged from that program just a week short of graduation.  But he had already sought mental health treatment after learning that his involvement with drugs and alcohol was in "great measure due to his underlying mental health issues," which the Salvation Army had not been equipped to treat.

At the June 28 hearing defense counsel described the progress appellant had made, and he emphasized the discovery that appellant was in need of mental health treatment in

4

conjunction with drug treatment.[3] Appellant had already made efforts to begin that treatment through the Evans Lane Wellness & Recovery Program at the Santa Clara Valley Medical Center, and LifeChoices Treatment Services. The court heard from the LifeChoices program director, who confirmed that the Salvation Army program had been inadequate to address the mental health component of appellant's behavior. The program director testified that more than 90 percent of all patients in substance abuse programs actually had "mental health issues," many undiagnosed. The court confirmed the witness's view that someone (like appellant) who had had extensive treatment but had been unsuccessful—either by leaving the program or being terminated from it—"that's because the dual diagnosis issues were not addressed in that treatment." The court also indicated that it would welcome testimony from a Salvation Army representative. The district attorney objected to any further continuance, but the court agreed to order one last continuance in order to consider further treatment information.

The court then addressed appellant directly, making it clear that it was considering the issues carefully: "I don't take anything that comes before me lightly. I recognize it is your life I'm dealing with. The greatest difficulty is that . . . timing is everything in life, and your decisions, your life choices have not been good to date. [¶] I do want to consider what effect any mental health issues that ha[ve] not been addressed plays into that. I am going to allow for that so that I am comfortable with whatever decision that I make." The court expressed concern that appellant's activity of selling drugs affected many others who were struggling with addiction. It also observed that appellant's extensive prior criminal conduct created a concern for the safety of the community. The court emphasized, however, that "before I make a decision, I want to feel comfortable that it's the right decision and that I'm taking everything into consideration." Accordingly, the

---

[3] Counsel summarized appellant's diagnoses of bipolar disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder.

court granted the continuance to July 22, 2013 to give defense counsel an opportunity to subpoena the Salvation Army representative and to receive the LifeChoices assessment and thus "consider every factor in making a decision."

On July 22, 2013 the hearing was continued yet again, until the matter was finally determined on July 31, 2013. The court announced that it had reviewed the previously received information, and defense counsel submitted additional documents and addressed the court about mental health treatment for appellant. The Salvation Army representative did not testify, but he authorized counsel to express the representative's disappointment that appellant, having made "great strides in changing his behavior," had been discharged from the six-month program only one week before successful completion, for what the representative called a "petty reason." Meanwhile, appellant had completed a 30-day course of treatment at LifeChoices and was now scheduled to enter Evans Lane for long-term treatment of "the very issues that confront Mr. Anduja." Counsel reminded the court that appellant's only strike was old. All of his "contacts over the years with the criminal justice system," he argued, were "directly attributable to his mental health issues that have, for such a long period of time, gone undiagnosed and untreated." Without beneficial treatment, he argued, appellant would be released from custody "in the same situation that he's always been," with no benefit to him or society. The Evans Lane treatment facility, on the other hand, would offer appellant the "best opportunity for success," and appellant had "expressed a great willingness to participate" in the program. Counsel thus urged the court to place appellant on probation and require him to complete the Evans Lane program, which could take a year. Appellant had the support of family and friends.

The court advised the parties that it had "spent extensive time on this case because I don't take it lightly. It is a big decision clearly for Mr. Anduja more than anybody else . . . [a decision that] will impact his life." The court had reviewed the arguments of both parties, the probation report, and case law. It felt "constrained," however, by the

6

factors it was empowered to consider and those it was not permitted to consider. In particular, the court said it could not consider "what could be best for society, what might be the best thing for Mr. Anduja in this case . . . ."

Acknowledging rehabilitation and punishment as dual sentencing objectives, the court pointed to "numerous aggravating factors" in this case, including the four parole violations and termination of four grants of probation. Although appellant's strike prior was old, it was serious and violent. Since then he had had four felony convictions and 15 misdemeanor convictions. The current crime indicated planning, as evidenced by the large quantity of contraband. The court acknowledged the argument of the defense, that defendant had never been properly treated for his mental health issues, but it rejected any suggestion that those issues were a cause of the current offense, and it could find no authority for determining that mental health considerations alone take a defendant outside the scope of the Three Strikes law. The court also acknowledged appellant's improvements in behavior; it "want[ed] to believe it's a true change in lifestyle" rather than "because something serious is hanging over your head." It commended appellant for "working hard," and it expressed the hope that he would continue with the changes he had made. Nevertheless, in light of the "numerous factors [it] had to consider," the court "simply [could not] find that Mr. Anduja falls outside of the strike law, and, therefore, the Romero [motion] is denied."

Given the stringent standard for overturning a lower court's decision under section 1385 and *Romero*, we cannot find either a failure to exercise its discretion or an abuse thereof. Appellant's strike was an October 1997 gang-related offense in which the passenger of a vehicle was stabbed, leading to appellant's conviction of assault with a deadly weapon. Also in 1997 was a robbery charge that led to appellant's no-contest plea to second degree burglary. In January 2009 he and one other person shattered the window of a van and stole a purse containing numerous items, including $200,000 worth of jewelry. Again he pleaded to second degree burglary as well as grand theft. The

following month appellant was stopped while driving on a suspended license and was found to be in possession of a stolen navigational ("GPS") device. He pleaded no contest on that occasion to the felony charge of receiving stolen property. He had also incurred four felony convictions for possession of marijuana for sale and 15 misdemeanor convictions. His compliance with domestic violence treatment had been poor, he had failed to register as a narcotics offender, he had tested positive for marijuana, and probation had twice been revoked for committing new offenses. And he committed the present offense while on parole for the two 2009 theft offenses. Six months after his April 2011 parole he violated probation by possessing methamphetamine, marijuana, a stun gun, and a weapon, followed two months later by a violation for using methamphetamine, and five months after that for absconding and failing to participate in drug treatment.

The court's explanation of its reasoning demonstrates that it appropriately considered all the circumstances bearing on the question presented, whether to dismiss the strike allegation in the interests of justice. It repeatedly emphasized the importance of careful evaluation of appellant's circumstances in light of the factors it was required to consider. Appellant, however, focuses on statements he believes indicate a mispprehension of the court's duty: that his post-strike offenses were increasingly serious; that mental illness was a less significant factor unless it contributed to the offense; and that the court could not consider the argument that appellant and society would benefit from his post-arrest rehabilitation.

The first argument is based on an apparent misunderstanding of the court's point. It was not suggesting that the offenses following the assault with a deadly weapon were more serious than that crime; it only observed the progression of offenses between the late 1990's and 2009, when he participated in a vehicle burglary, receiving stolen property, and possession of methamphetamine for sale. It was not beyond the court's authority to consider the lengthy record of crimes, probation violations, and parole

8

violations occurring during this period. There was no error in the court's treatment of this history as serious, whether viewed as increasingly so or not. The court's suggestion that mental illness was an appropriate consideration only if it was a causal factor in the commission of the crime reflects the court's implicit conclusion that selling methamphetamine was a choice appellant made independent of mental health issues. And even if misguided, this comment was a minor part of the court's reasoning; its main point was not that mental health considerations were irrelevant in this case, but that they did not in themselves take appellant outside the spirit of the Three Strikes law. Appellant's final argument regarding the significance of his rehabilitation efforts misstates the court's explanation. Unquestionably the court extended great leeway to the defense to present evidence, including live testimony, regarding appellant's rehabilitation efforts. In the end, however, it did not regard his past and even recent efforts as sufficient to outweigh the need to protect the public and further the state's additional purpose of punishment.

It is clear from this record that the court gave the defense every opportunity to establish a convincing factual basis for granting a *Romero* motion. Nevertheless, after giving due consideration to "every factor that has been presented"-- including the specifics of the current offense, the nature of the prior strike offense, appellant's background (including his criminal record), and his prospects-- the court was unable to conclude that "extraordinary circumstances" took appellant outside the letter and spirit of the Three Strikes law. (*People v. Vargas*, *supra*, 59 Cal.4th at p. 641.) As in *People v. Williams*, *supra*, 17 Cal.4th at p. 163, in the years following his strike conviction appellant "did not refrain from criminal activity . . . and he did not add maturity to age. Quite the contrary. In those years, he was often in prison or jail; when he was not, he violated parole and . . . probation." (See also *People v. Philpot* (2004) 122 Cal.App.4th 906-907 [court properly concluded that defendant, as a "flagrant recidivist," was not outside the spirit of the Three Strikes law, based on defendant's 20-year history of

9

criminal activity, his underlying drug addiction, and the prior and current offense as indicative of his poor prospects].)  Because we can find no failure to exercise the court's sentencing discretion; no "arbitrary, capricious, or patently absurd" exercise of that discretion; and no "extraordinary circumstances" compelling a dismissal of appellant's strike under section 1385, the court's determination of the *Romero* motion was not "so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)  Reversal is not required.

*Disposition*

The judgment is affirmed.

_____

ELIA, Acting P. J.

WE CONCUR:



_____

BAMATTRE-MANOUKIAN, J.



_____

MIHARA, J.

11