Filed 12/23/14  P. v. Arnett CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS LAMAR ARNETT,<br><br>    Defendant and Appellant. | G050397<br><br>(Super. Ct. No. FSB1200158)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, J. David Mazurek, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Jesus Lamar Arnett of forgery (Pen. Code, § 476 (count 1); § 475, subd. (a) (count 2); all statutory references are to the Penal Code). The trial court found Arnett suffered two prior felony convictions qualifying as strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Arnett contends the trial court erroneously instructed the jury on the elements of forgery by using the word "aids" rather than "facilitates." He also argues the trial court abused its discretion when it declined to strike or dismiss his prior strike convictions (§ 1385) without adequately considering the particulars of his background, character, and prospects for rehabilitation. For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

On January 11, 2012, a San Bernardino police officer arrested Arnett in the lobby of the police station. The officer searched Arnett and found $810 in counterfeit currency and $25 in genuine bills folded together in Arnett's left front pants pocket. Arnett initially told the officer he received the counterfeit money from a store that cashed his Social Security check, but admitted later the store gave him legitimate currency, which he gave to his wife. Still needing money to support his eight children, he paid a friend $200 for $1,000 in bogus currency, which he peddled on the streets. He provided an example of selling a counterfeit $100 bill for $40 of real currency, explaining "he just needed to hustle." Asked what he meant by "hustle," Arnett "just smiled."

A United States Secret Service agent confirmed the Federal Reserve notes Arnett possessed were counterfeit, probably produced on "a typical home [ink jet] printer." Any person "familiar with handling money . . . would feel there [was] something wrong with [the] bills," although the notes might pass as genuine under certain circumstances, if mixed in with other currency or if a person could not see the bills clearly. The person creating the notes made efforts to have the bills appear genuine by using special paper, and making sure the front and back of the bills lined up correctly.

2

The agent explained counterfeit money is distributed to other people "to be spent or passed" commercially "[t]o gain some type of monetary instrument, such as paying for a meal or obtaining a gift card." The agent also explained there is a market for counterfeit money "on the streets."

Following trial in May 2012, the jury convicted Arnett as noted above. At sentencing in May 2013, the court imposed an indeterminate term of 25-years-to-life for one of the forgery counts and stayed (§ 654) an identical term for the other conviction. The court added three one-year enhancements for other prior convictions (§ 667.5, subd. (b)).

## II

### DISCUSSION

A. *The Trial Court Did Not Err in Instructing the Jury on Forgery (§ 475, subd. (a)) as Charged in Count 2*

Section 475 provides, "(a) Every person who possesses or receives, with the intent to pass or facilitate the passage or utterance of any forged, altered, or counterfeit items, or completed items contained in subdivision (d) of Section 470 with intent to defraud, knowing the same to be forged, altered, or counterfeit, is guilty of forgery." (See § 470, subd. (d) [listing items including a "bank bill, or note"]; *People v. Burkett* (1969) 271 Cal.App.2d 130, 134 [photocopied dollar bill is an item within the meaning of § 470]; see *People v. Bedilion* (1962) 206 Cal.App.2d 262, 269 [paper currency issued by Federal Reserve banks is bank note or bill].)

The trial court instructed the jury with CALCRIM No. 1930, which provided in relevant part: "The defendant is charged in Count 2 with possessing counterfeit document[s] in violation of Penal Code section 475 subdivision (a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] One. The defendant possessed counterfeit notes or bills; [¶] Two. The defendant knew that the document was counterfeit; Three. The defendant intended to *pass, use, or aid the*

3

*passage or use* of the document as genuine; [¶] And, when defendant possessed the document, he intended to defraud. [¶] Someone intends to defraud if he or she intends to deceive another person either to cause a loss of something of value, or to cause damage to, a legal, financial, or property right. [¶] It is not necessary that anyone actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's acts. [¶] A person passes or uses a document if he or she represents to someone that the document is genuine. The representation may be made by words or conduct and may be either direct or indirect." (Italics added.)

Arnett observes section 475, subdivision (a), requires "the defendant possess the counterfeit document with the intent to 'facilitate' its passage or utterance. CALCRIM No. 1930 changes the word 'facilitate' to 'aid.'" According to Arnett, these terms are not synonymous. Arnett explains, "To 'aid' is a general term that means to provide some type of help in the commission of a crime. [Citation.] To 'abet' means to encourage, advise, or instigate the criminal act. (*Ibid.*)" Thus, "'*Facilitate* the passage or utterance' of counterfeit money means aiding and abetting the circulation of counterfeit money as genuine. (§ 475, subd. (a).)" Arnett contends CALCRIM No. 1930 "allowed the prosecutor to argue that [his] act of placing counterfeit money in a black market stream of commerce by selling it to others who knew it was counterfeit 'aid[ed] the passage of use' of the fake money as genuine. Had the court correctly instructed the jury, the jury would have been required to find that [defendant], himself, intended to pass or utter the money as genuine, or aided and abetted in the passage or utterance of the money as genuine."[1] Arnett contends we must reverse his conviction because it is impossible to

---

[1]     The prosecutor argued Arnett intended to aid in the passage of the counterfeit bills as genuine because he admitted selling the counterfeit bills on the street, the bills looked real, there was a black market for the bills, and "when you sell it to people on the streets, you're aiding in passing this off as genuine because what does that person who buys [] that money off defendant do? . . . There's only one thing and one thing only, and that's defraud people." The prosecutor added, "So whether or not he's intending to use it himself because he doesn't have any money . . . or if he's using it to

4

know if one or more of the jurors found him guilty of the broader standard of intending to "aid" in the passage or use of counterfeit money rather than the narrower standard of "facilitating" its passage or utterance. We find his argument creative, but unpersuasive.

"'Facilitate" is not defined specially in the law, but the Black's Law Dictionary provides the following definition: "to make the commission of a crime easier." (Black's Law Dict. (9th ed. 2009) p. 668. col. 2.) "Aid" and "facilitate" do not have significantly different meanings in this context. If the jury found Arnett "intended to . . . *aid the passage or use* of the document as genuine" (CALCRIM No. 1930), it necessarily found he intended to make passage or use of the counterfeit item easier. Arnett cites no authority that "facilitate" under section 475 requires the prosecution to prove the person aided and abetted another person in passing off the money as genuine.

In any event, the jury found Arnett knowingly possessed counterfeit currency with intent to defraud. The jury therefore found Arnett intended to deceive another person either to cause a loss of something of value, or to cause damage to a legal, financial, or property right. There is no possibility the jury would have found he knowingly possessed the counterfeit currency with intent to defraud and not found he intended "to pass or facilitate the passage or utterance of" the bills. Additionally, the jury's verdict on count one, a violation of section 476, necessarily resolved the challenged element against Arnett. The court's instruction concerning count one stated the prosecution must prove Arnett possessed a false note or bill with the "inten[t] to pass or use the document as genuine . . . ." (CALCRIM No. 1935.) The jury's verdict finding Arnett guilty of section 476 demonstrates it found he intended to pass or use the counterfeit money as genuine.

sell to other people to make some money, he's passing off fake money as real money." Defense counsel countered Arnett did not intend to pass, use, or aid in the passage or use of the bills as genuine: "They want you to believe that he is somehow saying, well, person 'A' sells it to them and then my client comes over and says, 'Yeah, that's the bill. They're real.' That would be aiding in the passage. You don't have evidence of that."

5

B. *Trial Court Did Not Abuse Its Discretion in Declining to Strike Arnett's Prior Strike Convictions*

Arnett contends the trial court abused its discretion by declining to exercise its authority under section 1385, subdivision (a), to strike one or both August 2000 convictions for violating section 288, subdivision (a), (lewd acts with a child under age 14) that triggered application of the Three Strikes law. (§§ 667.5, subds. (b)-(i), 1170.12.) We discern no abuse of discretion.

Section 1385 provides, "(a) The judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes." The trial judge may in furtherance of justice strike a finding under the Three Strikes law that a defendant has previously been convicted of a serious or violent felony. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.) In determining whether to strike a prior conviction finding, the court must "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) We review a trial court's refusal to strike a prior conviction finding under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376 (*Carmony*).) The defendant bears the burden of showing the trial court's sentencing decision was irrational or arbitrary. (*Id.,* at pp. 376-377.) "In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." (*Ibid*.)

6

Arnett contends the trial court abused its discretion in refusing to dismiss one or both of his prior strikes because the court did not adequately assess the particulars of his background, character, and prospects for rehabilitation.[2] He argues, "Without question, [Arnett] deserves to be punished for these forgery crimes, but not to the extent the punishment extinguishes any chance of him becoming a contributing member of society. With proper drug and alcohol rehabilitation, and skills to deal with his disability, [he] could re-enter society as a caring family man and wage earner."

The trial court considered the sentencing report, which reflected Arnett was an unemployed 38-year-old recidivist with no job skills and a history of drug and alcohol addiction. Arnett was a former gang member, but had not been active since 1999. He received monthly supplemental Social Security income (SSI) of $929 and was married with seven or eight children and another on the way.

Arnett's criminal record includes a June 1994 misdemeanor conviction for exhibiting a firearm (§ 417, subd. (a)(2); 90 days jail and probation), a June 1998 misdemeanor conviction for theft of an access card (§ 484, subd. (e); 90 days jail and probation), an August 1996 felony conviction for unlawful intercourse with a minor more

[2] The court considered and rejected trial counsel's argument Arnett's two prior strike convictions for violating section 288, subdivision (a), (lewd acts on a child under age 14) should be treated as a single prior strike conviction because both acts occurred on the same date against the same victim and arose out of the same case. Counsel agreed the trial court in the prior case imposed and did not stay (§ 654) concurrent terms for the convictions. (Cf. *People v. Vargas* (2014) 59 Cal.4th 635 [two prior convictions arising out of a single act against a single victim cannot constitute two strikes under the Three Strikes law; robbery and carjacking].) Counsel admitted there was no evidence the prior convictions arose out of a single act, and the prosecutor noted "just because these crimes were committed against the same victim on or about the same date doesn't mean that it all happened at the same time. He could have violated the victim multiple times on the same date and those are separate incidents."
Although Arnett's current offenses are not serious or violent, the strike convictions for violating section 288 (lewd acts on a child under age 14) excepted him from relief under the Three Strikes Reform Act of 2012. (§ 667, subd. (e)(2)(C)(iv)(III); § 1170.12, subd. (c)(2)(C)(iv)(III).)

7

than three years younger (§ 261.5, subd. (c); 365 days jail, probation, violation of probation, 16 months prison, violation of parole), a March 1998 misdemeanor theft conviction (§ 484/490.5; 30 days jail), and August 2000 felony convictions for lewd acts on a child under age 14 (two counts) and false imprisonment (§ 288, subd. (a); § 236; 36 months prison, violation of parole). In March 2005, he suffered a felony conviction for failing to register as a sex offender (§ 290, subd. (g)(2); 36 months prison; five parole violations). In April 2011, Arnett suffered a felony conviction for possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a); probation).

Concerning the current offenses, Arnett faulted his attorney and the court. He accused the police officer of fabricating his statements, and complained the officers could not know what he intended to do with the counterfeit currency.

Trial counsel argued Arnett was "not [the] same person" he was in 1998 when he committed the strike offenses and there was "still time for him to move forward and become a productive member of society." Counsel noted Arnett registered as a sex offender since his conviction in 2003, had not suffered a conviction between 2005 and 2011, and did not have a serious or violent felony conviction after August 2000. Counsel emphasized the current offense was a nonserious offense that the court could reduce to a misdemeanor. Counsel argued Arnett had tried to "deal with the situation and make his life better" by completing a drug program in 2008.

Counsel's sentencing memorandum also emphasized Arnett was the victim of a gunshot wound in 2004. Now disabled, he required a cane or wheelchair and suffered from constant pain. Consequently, he suffered from clinical depression and took prescription medication for the disorder. Arnett attributed his current behavioral problems to depression and pain caused by the shooting injury.

Arnett's wife has HIV. She gave birth to three of the couple's children after her diagnosis. She attended the trial and counsel argued she provided Arnett with a stable home life and emotional support. Counsel argued Arnett had been focused on

8

helping his family, noting he readily gave his disability income to his wife. The trial court questioned whether Arnett could become a productive member of society, citing Arnett's background and failure to take responsibility for his current crimes. The court cited Arnett's criminal record dating to 1994, noting "the fact that [Arnett's] in [a] wheelchair hasn't stopped him from committing crimes."

The court stated it had sympathy for Arnett's "circumstance and what's he's going through, but I have to look at the entire record" and concluded nothing suggested Arnett "can change or modify his behavior." His criminal history dated back to the age of 18 or 19 and before that he was a gang member.[3] Arnett previously had benefited from having "strikes stricken, dismissed or not charged twice already – once in 2003 and again in 2011 in Riverside County. Neither one of those encounters sobered him up for the purposes of understanding that he faced a lifetime commitment to prison and caused him to modify his criminal behavior in any significant way. He has spent much of his adult life in prison."

The court also observed, Arnett had not "shown any remorse whatsoever. He blames his attorney, blames the Court, says the police fabricated his statement, his statement was not recorded, comes up with many excuses for why he shouldn't have been convicted in the first place. And somebody that's not willing to accept responsibility for his acts does not give the Court a lot of hope that he can change and modify or adapt his conduct."

In denying Arnett's *Romero* motion, the court observed, "I'm not holding it against him that he was injured and confined to a wheelchair, and I also understand – as I asked [the prosecutor] since a wheelchair limits his ability to get around and, therefore, commit crimes, understanding that, even so, he has been in that wheelchair since 2004; he continues to commit crimes; continues to violate parole. This is exactly the type of

_____

[3]     Arnett asserts "he was not in a gang." It is unclear if he means he was never in a gang, or not in a gang at the time of sentencing.

9

person the Three-Strikes law was designed for. You know, he continues to commit these crimes, to be a burden on society, to be a burden on the community. And given the fact that he's had opportunities already to change his ways, just can't afford in this society or community to have people continually committing crimes, whatever they are. It's a burden to us. It detracts and [tears] up the moral fabric of society and our community. [¶] And given all those factors, the court is going to decline to strike the prior conviction. I think he's had his chances. He's had his choices; he's made them. I'm sorry he became addicted to drugs, but it was his choice to use drugs in the first place. [¶] I'm sorry for the fact that he is in a wheelchair and I really do have a lot of sympathy for that, and I guess this is why sometimes being a judge is a very difficult thing. And I have to balance what I think is appropriate, what the law thinks is appropriate with assessing somebody's character, prospects, their history. And based upon his history, I don't have proof that Mr. Arnett would not continue to commit crimes, would not continue to abuse drugs, would not, in some sense, be a danger or burden to the community and that he falls within the spirit of the Three-Strikes law. So the Court will decline to strike a strike; deny the *Romero* motion."

The record shows the trial court considered the relevant factors in exercising its discretion to find Arnett did not fall outside the spirit of the Three Strikes law. Given Arnett's extensive criminal and substance abuse history, his numerous violations of probation and parole, the fact he had spent much of his adult life in prison, his failure to modify his behavior despite having strikes previously dismissed, his lack of remorse, and lack of job skills or prospects, the trial court's refusal to strike the priors did not fall outside the bounds of reason under the applicable law and the relevant facts. (*Williams, supra,* 17 Ca1.4th at p. 162.) Notably, the court's comments reflect the court considered Arnett's personal history and voiced sympathy with the circumstances of his disability and the hardships his family faced. But his disability and family had not deterred him from continuing to commit crimes and posing a danger and burden to

society. The court abuses its discretion only in "an extraordinary case – where the relevant factors described manifestly support the [dismissing] of a prior conviction and no reasonable minds could differ." (*Carmony* , *supra*, 33 Cal.4th at p. 378.) Arnett fails to establish the court's refusal to strike his strikes constituted an abuse of discretion.

## III

## DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.