Filed 10/12/21  P. v. Arellano CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E075826 |
| v. | (Super.Ct.No. INF1600488) |
| ABEL ARELLANO, JR., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Otis Sterling III, Judge.
Affirmed.

Michael A. Hestrin, District Attorney, and Jesse Male, Deputy District Attorney
for Plaintiff and Appellant.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and
Respondent.

1

A jury found defendant and appellant, Abel Arellano, Jr., guilty of involuntary manslaughter (§ 192, subd. (b),[1] count 1) and various other offenses. The court denied defendant's *Romero*[2] motion to strike his prior strike offense and sentenced him to an aggregate term of imprisonment of 23 years four months.

Thereafter, the trial court granted a motion to recall the sentence.[3] (*Arellano*, *supra*, E070730.) The court then granted a motion for new trial on the count 3 (assault with a deadly weapon) and count 4 (burglary) offenses. (*Ibid*.)

After the People appealed the order, this court held that the trial court erred by granting a new trial on the count 4 offense, but upheld the grant of a new trial on the count 3 offense. (*Arellano*, *supra*, E070730.) The People declined to retry defendant on the count 3 offense, which the court dismissed. At resentencing, the court struck defendant's prior strike conviction and prior serious felony conviction enhancements. The court imposed an aggregate term of imprisonment of seven years four months.

On appeal, the People contend the court abused its discretion in striking defendant's prior strike conviction enhancement. We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[3] By order dated December 23, 2020, we granted the People's request that we take judicial notice of the record in the prior appeal. (*People v. Arellano* (Oct. 4, 2019, E070730) [nonpub. opn.] (*Arellano*).)

# I. FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2016, defendant and his girlfriend Norma had been separated for about a week. They had a four-year-old daughter. Norma and their daughter were staying with her grandparents in Indio. (*Arellano*, *supra*, E070730.)

Norma's grandparents owned another house in Thermal. Norma's friend, Yajaira Gonzalez, was renting the home. Defendant had the keys to the house because he was remodeling it for the grandparents. According to Gonzalez, however, whenever defendant wanted to enter the house, he had to notify her first. (*Arellano*, *supra*, E070730.)

On April 14 and 15, defendant and Norma argued over various issues, including his complaint that she was not letting him see their daughter. At one point, defendant sent her a text message reading, "I'm going to beat your ass, and I don't care who is there." (*Arellano*, *supra*, E070730.)

In the early morning hours of April 16, Norma, Gonzalez, and two male friends—Josue Aguilar, and Eduardo Chan—arrived at the Thermal house, where they intended to spend the night. Around 4:00 a.m., defendant showed up. He honked his horn repeatedly. Defendant then banged on the door around 10 times. Finally, he kicked it open. (*Arellano*, *supra*, E070730.)

Defendant said either, "Where's Norma," "Where's my girlfriend," or "Where's my girl," the latter which could have referred to his daughter. Norma tried to push him

3

out of the house. Defendant slapped her in the face, knocking her down. (*Arellano*, *supra*, E070730.)

Aguilar and Chan then "started beating" defendant. Gonzalez had a baseball bat; she hit defendant with it three times. Defendant "balled up," putting his arms over his head and crouching down. He also took out a pocketknife and swung it at his opponents. (*Arellano*, *supra*, E070730.)

Aguilar sustained nine knife wounds, including one that partially severed his jugular vein and caused his death. Chan sustained five knife wounds but survived. (*Arellano*, *supra*, E070730.)

The fight lasted less than a minute; it ended when defendant ran out of the house. He ran to a neighbor's house, banged on the door, and yelled, "Help me, help me." Later that day, after defendant learned the police were looking for him, he turned himself in. (*Arellano*, *supra*, E070730.)

According to defendant, he drove by Norma's home and did not see her car, so he went to the Thermal house to find her and his daughter. When he was knocking on the front door, he heard whispering. Defendant was afraid for the safety of Norma and his daughter, so he kicked in the door. Defendant admitted slapping Norma. The two men then "jumped" him; one of the men started hitting him with a baseball bat. Defendant was "scared for [his] life." He used the knife to protect himself. (*Arellano*, *supra*, E070730.)

4

The jury found defendant guilty of the involuntary manslaughter of Aguilar (§ 192, subd. (b), count 1), as a lesser included offense of murder (§ 187, subd. (a)), with an enhancement for the personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)); assault with a deadly weapon on Chan (§ 245, subd. (a)(l), count 3); first degree burglary (§§ 459, 460, subd. (a), count 4); and inflicting corporal injury on Norma, a cohabitant (§ 273.5, subd. (a), count 5). The jury acquitted defendant of the attempted murder of Chan (§§ 664, 187, subd. (a), count 2) and the lesser included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)). (*Arellano*, *supra*, E070730.)

Before the jury was discharged, the prosecutor objected that the verdict finding defendant not guilty of first degree murder on count 1, which had been presented on a felony-murder theory, was inconsistent with the verdict finding him guilty of burglary on count 4. He asked the trial court to inquire further of the jurors. The trial court ruled, however, that it could not "get into the minutia[e] and specifics of their deliberative process." (*Arellano*, *supra*, E070730.) In a bifurcated proceeding thereafter, the trial court found allegations that defendant had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)) true. (*Ibid.*)

On December 8, 2017, the trial court considered defendant's *Romero* motion. The court conducted a lengthy analysis of the facts before it, including those contained in the moving papers, the probation officer's report, letters submitted on behalf of defendant,

5

and the arguments of the attorneys.  The court ultimately concluded that "the fact that the jury did convict him of serious and violent felonies, in the end, the Court has decided not to strike [defendant's] prior strike conviction.  I think he does fall within the spirit of the three strikes law."

After hearing victim impact statements and the argument of counsel, the court conducted a lengthy analysis of the aggravating and mitigating factors.  The court sentenced defendant to an aggregate term of imprisonment of 23 years four months, consisting of the following:  the upper term of six years on count 4, doubled due to the prior strike (12 years); one-third the midterm (1 year), consecutive on count 1, doubled due to the strike prior (two years); one-third the midterm (1 year), consecutive on the personal use enhancement (four months); one-third the midterm (1 year), consecutive on count three, doubled (two years); one-third the midterm (1 year), consecutive on count 5 (two years); and a consecutive five years on the prior serious felony conviction enhancement.  (*Arellano*, *supra*, E070730.)  Defendant did not file a timely notice of appeal.  (*Ibid*.)

On March 12, 2018, defendant filed a motion for reconsideration of sentence and for a new trial.  In the motion, defense counsel requested the trial court recall the sentence pursuant to section 1170, subdivision (d)(1), or, alternatively, grant a new trial, based on insufficiency of the evidence.  In opposition, the People argued that section 1170, subdivision (d)(1), "allows [the court] to resentence a defendant, not to grant a motion for

6

new trial." In his reply memorandum, defendant withdrew his motion for new trial. (*Arellano*, *supra*, E070730.)

On April 6, 2018, after hearing argument, the trial court recalled the sentence. It stated that it was acting on its own motion, under section 1170, subdivision (d)(1). The court explained that, when it reviewed the transcript of the sentencing hearing, it realized it had failed to arraign defendant for judgment and failed to ask whether there was any legal cause why it should not pronounce judgment, in violation of section 1200. It found that this failure was prejudicial because if it had asked whether there was any legal cause, defense counsel might have asked for time to file a new trial motion. It then set a new sentencing hearing. (*Arellano*, *supra*, E070730.)

Defendant once again filed a motion for new trial, based on insufficiency of the evidence, but also based on inconsistency of the verdicts. (*Arellano*, *supra*, E070730.) The People filed a countermotion for reconsideration of the ruling recalling the sentence. They argued, once again, that the trial court could not recall a sentence for the purpose of allowing a defendant to move for a new trial. (*Ibid*.)

On May 11, 2018, the trial court denied the People's motion for reconsideration. The trial court claimed it had not recalled the sentence under section 1170, subdivision (d)(1); rather, it had acted under its "jurisdiction to correct fundamental mistakes that it believes it made at sentencing when substantial rights of the defendant have been impacted . . . ." (*Arellano*, *supra*, E070730.)

7

The court then granted defendant's motion for a new trial on counts 3 (assault with a deadly weapon) and 4 (burglary). With respect to the assault count, the court ruled that, in its view, defendant was not guilty because he was acting in self-defense. With respect to the burglary count, the court ruled that the verdicts were inconsistent, in that the jury found defendant guilty of burglary yet found him not guilty of felony murder. (*Arellano*, *supra*, E070730.) The People appealed from the order granting a new trial. (*Ibid*.)

On appeal, the People contended that the trial court could recall the sentence only for the purpose of resentencing, not for the purpose of allowing defendant to file a motion for new trial. (*Arellano*, *supra*, E070730.) This court held that it could not reach the issue because the People did not file a timely appeal from the order recalling the sentence. (*Ibid*.)

The People also maintained the trial court erred in granting a new trial on counts 3 and 4. (*Arellano*, *supra*, E070730.) This court held that the court below erred in granting a new trial on count 4 (burglary) because courts have no discretion to grant a new trial merely because the verdicts are inconsistent. (*Ibid*.) With respect to count 3 (assault with a deadly weapon), this court held that the court below acted within its discretion by granting a new trial based upon its conclusion that defendant had acted in self-defense. (*Ibid*.)

Thereafter, the People elected not to retry defendant on count 3 and moved to dismiss it. The People requested "the Court keep to the original sentence that was imposed . . . which was 23 years, [four] months, take away the two years" for the count 3

8

sentence. The court continued the matter to allow defense counsel an opportunity to brief any resentencing issues.

Defense counsel submitted a sentencing memorandum arguing that the court should strike defendant's prior strike conviction and prior serious felony conviction enhancements; defense counsel contended the court should resentence defendant to an aggregate term of seven years four months imprisonment. The People filed a response in which they contended the court should deny defense counsel's request and resentence defendant to 21 years four months of imprisonment.

At the resentencing hearing, the trial court indicated it was considering all the moving papers filed prior to the initial sentencing; the moving papers filed since the issuance of the remittitur from this court; the transcript from the original sentencing hearing, including the statements on behalf of both defendant and the victims; and the letters filed on behalf of defendant. After argument from defense counsel, the court noted, "last time we were here and defense made this motion to strike [defendant's] prior strike, I was really on the fence with that." The People maintained the trial court lacked discretion to reconsider the motion to strike the prior strike conviction.

The trial court contended "that the situation is different today in the sense that the [assault] charge has been dismissed by the People. So that takes away, somewhat, from the argument and the position that the People advocated to the Court last time we were here. And that's not insignificant for purposes of my consideration. And the People were in a position to recharge that or retry that particular offense and, essentially, put the

9

court back in the same position it was previously should [defendant] be convicted of that serious and violent felony. But, obviously, the People chose to dismiss that." "[T]he fact that he was convicted of a[n assault], which is a serious and violent felony, carried a lot of weight with this Court last time we were here. And the People did put quite a bit of emphasis that there were three additional strike offenses that he was convicted of, one of which is now gone."

"In consideration of everything that's been presented to the Court and the fact that the Court was struggling with this decision last time it was here and the fact that the situation has changed, the Court is going to exercise its discretion and strike [defendant's] prior strike. [¶] The things that I am pointing to are the fact that [defendant] was young when the prior strike was committed. He was 19 or 20 years old when that was committed. From the record, I cannot tell and it does not appear that the prior strike involved any actual physical violence."

"I'm also pointing to the fact that with regard to that prior strike, the defendant did successfully complete probation. And from what I understand, he remained free of any law enforcement contact until the present offense for a period of about four years. I do know that during the four years, it was indicated to the Court that he was attending school. I know that he was working towards his GED, general education degree . . . . [¶] . . . There was considerable information provided to me with regard to [defendant's] background . . . . I did take into consideration his prospects for the future . . . ."

"So given all those things, the Court is deeming him outside of the spirit of the three strikes law and is going to exercise its discretion in striking his prior strike as well as the five-year prison prior for the same reasons, which relates to the exact same case." "[I]t was pretty clear at the last sentencing hearing that a major pull on the Court towards not striking his strike was the fact that he was convicted of a serious and violent felony, that being the assault with a deadly weapon charge on . . . Chen. And that is not insignificant."

"I did take into consideration the fact that he was convicted of first-degree burglary in this particular case. There [are] some mitigating factors as it relates to that first-degree burglary conviction. This was not a stranger's home. This was not a home that [defendant] did not have prior access to. He was working on the home. He did have access to the home at times when the resident was not there, albeit for the purpose of making repairs. . . . I believe I expressed that there was a dual purpose from my perspective . . . as to why it is he went through the door in the manner that he did. . . . One was that he went through the home because he was going to assault [Norma] . . . , but also the concerns that he had with regard to his minor child . . . ."

The People requested the court "choose the principal term on the most significant charge, and that's burglary, which is the highest triad." The court noted that "[t]ypically, under the law, the principal term would be the term that carries the most potential time, which in this case would be Count 4, the burglary charge, and the triad for that is 2, 4, 6." The trial court then asked the People if it was their position that court was required to select the burglary count as the principal term. The People responded, "No. I believe it's

11

discretionary, Your Honor.  However, the People would like, at least in light of the Court's ruling for striking the strike, to select the count that carries the greatest time. We're, obviously, asking for the upper term unless the Court has reconsidered that as well."

The court identified the circumstances in aggravation and mitigation as to both the crime itself and defendant.  The court selected count 1 (involuntary manslaughter) as the principal term, imposing the upper term of four years and a consecutive one year on the attached personal use enhancement.  The court then imposed a consecutive one-third the midterm of four years (1 year, 4 months) on count 4.  Finally the court imposed one-third the midterm of three years (1 year) on count 5.  Thus, the court sentenced defendant to an aggregate term of imprisonment of seven years four months.

The court neglected to award defendant custody credits at sentencing.  On August 3, 2020, the Department of Corrections and Rehabilitation sent the trial court a request for copies of the sentencing minute order and abstract of judgment, apparently calling the parties attention to the failure of the trial court to award defendant custody credits.  On September 18, 2020, the probation department filed a memorandum regarding custody credit in which the probation officer calculated defendant's custody credits as 3,039 days while noting, "It is not the function of the trial court to calculate prison worktime credits on a prior sentence; rather, it is the administrative responsibility of the Department of Corrections."

12

At a hearing that same day, the People objected to the court's calculation of custody credits: "This individual was previously sentenced. He went to state prison. And upon [section] 1170[, subdivision] (d), I believe the motion by the defense . . . , the Court entertaining the motion, the People submitted that the Court was without jurisdiction to do so. Therefore, the People just object as a matter of record . . . ."

The court awarded defendant a total of 3,039 days of custody credit. Defense counsel asked "the Court [to release defendant] forthwith as he's satisfied the seven-year-four-month sentence based on his credit calculation." Over the People's objection, the court ordered defendant immediately released.

## II.  DISCUSSION

The People contend the court abused its circumscribed discretion in striking defendant's prior strike conviction enhancement. We disagree.

The intent of "the Three Strikes law [is] to punish repeat criminal offenders severely, to drastically curtail a sentencing court's ability to reduce the severity of a sentence by eliminating alternatives to prison incarceration, and to limit an offender's ability to reduce his or her sentence by earning credits . . . ." (*People v. Vargas* (2014) 59 Cal.4th 635, 641 (*Vargas*).) "[W]hen facing a motion to dismiss a strike allegation, the trial court 'must consider whether, in light of *the nature and circumstances* of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, *the defendant may be deemed outside the scheme's spirit*, in whole or in part, and hence should be treated as

13

though he had not previously been convicted of one or more serious and/or violent felonies.'" (*Ibid*.) "'[T]he circumstances must be "extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack" [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.'" (*Ibid*.)

"Under section 1385, the trial court is empowered to strike a prior strike conviction 'in the furtherance of justice.' [Citations.] However, that great power should only be used in 'extraordinary' circumstances, when the ends of justice demand it." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1105.) "In determining whether such circumstances exist in a given case, the trial court must balance society's legitimate interest in imposing longer sentences for repeat offenders and the defendant's constitutional right against disproportionate punishment." (*Ibid*.) "[T]he court must remember the Three Strikes law is not discretionary in nature. Rather, the law must be applied . . . unless the court concludes an exception to the law should be made because, *for articulable reasons that can withstand scrutiny for abuse*, the defendant lies outside the spirit of the law such that he should be treated as though he had not previously been convicted of one or more strikes." (*Ibid*.)

Here, the trial court indicated it had considered all the moving papers filed prior to the initial sentencing; the moving papers filed since the issuance of the remittitur from

14

this court; the transcript from the original sentencing hearing, including the statements on behalf of both defendant and the victims; and the letters filed on behalf of defendant. The court then gave the parties the opportunity to argue the issue. The court provided an extensive analysis of the factors it considered when expositing its decision to grant defendant's request.

Those factors included: (1) defendant was no longer convicted of a third strike offense, a violent offense, in the instant case; (2) defendant was young when he committed the prior strike offense; (3) defendant had successfully completed probation on the prior strike offense; (4) defendant remained free of any law enforcement contact, a period of around four years, until he committed the instant offenses; and (5) defendant had been attending school and working toward his GED.

The court observed that defendant's burglary was not of a stranger's home. Rather, it was of a house to which he had access "albeit for the purpose of making repairs. . . ." The court further noted that at least one of the reasons defendant went to the home was out of concern regarding his minor child. Thus, the court properly took into consideration the relevant facts and circumstances regarding defendant's present felonies and prior serious felony conviction, and the particulars of defendant's background, character, and prospects. The court's conclusion that defendant was outside the spirit of the three strikes' scheme such that he should be treated as though he had not previously been convicted of his single prior serious felony was within its discretion.

15

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

MILLER

J.

FIELDS

J.