Filed 12/12/23 P. v. Hatfield CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALBERT JAMES HATFIELD,<br><br>    Defendant and Appellant. | D081079<br><br><br>(Super. Ct. No. SCD163167) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge. Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

# I. BACKGROUND

In 2002 a jury convicted appellant Albert James Hatfield of seven counts of first degree robbery (Pen. Code,[1] §§ 211, 212.5, subd. (a)). His 42-year sentence included the following enhancements: one year for count one and four months for each of the remaining counts for use of a deadly weapon (§ 12022, subd. (b)(1)), five years for a prior serious felony conviction (§ 667, subd. (a)(1)), and one year for each of Hatfield's two prior prison terms (§ 667.5, subd. (b)). Hatfield was also sentenced under the "Three Strikes" law due to the prior serious felony, which doubled the term for each count (§ 667, subd. (e)(1)).

On September 29, 2022, the trial court held a hearing because Hatfield was eligible for resentencing on two grounds. First, the California Department of Corrections and Rehabilitation (CDCR) recommended resentencing,[2] making him eligible under section 1172.1.[3] Second, Hatfield's enhancements for the two prison priors were no longer valid, making him eligible under section 1172.75.

The court found that recall and resentencing were mandatory pursuant to section 1172.75, subdivision (c) and resentenced Hatfield under that statute. The court struck the two prison priors and the deadly weapon enhancements attached to counts two through seven, reducing Hatfield's

---

[1]    All further statutory references are to the Penal Code.

[2]    This recommendation was in a letter dated February 22, 2022. That letter was used in the resentencing proceedings but was not included in the record. Hatfield's unopposed request for judicial notice of the letter is granted pursuant to Evidence Code section 452, subdivision (c).

[3]    At the time of the recommendation, section 1172.1 was numbered 1170.03. It was moved to section 1172.1 on June 30, 2022. (Stats. 2022, ch. 58, § 9.)

sentence from 42 years to 38 years.  It denied Hatfield's request to dismiss the deadly weapon enhancement attached to count one, the prior serious felony, and the prior strike; finding that reducing his sentence below 38 years would endanger the public.

Hatfield appeals, claiming the court did not properly apply the presumption under section 1172.1 in favor of the CDCR's recommendation. He also contends the court erred under section 1385 by refusing to dismiss the remaining deadly weapon enhancement, the prior serious felony, and the prior strike.  We disagree and affirm.

## II.  DISCUSSION

*A.  Section 1172.1 Does Not Create a Presumption in Favor of the CDCR's Particular Sentencing Recommendations.*

Section 1172.1 authorizes recall and resentencing when recommended by the CDCR.  (§ 1172.1, subd. (a)(1).)  When such a recommendation is made, there is "a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18."  (§ 1172.1, subd. (b)(2).)  Subdivision (c) of section 1170.18 refers to the risk that a defendant will commit one of eight particularly serious or violent felonies known as *super strikes.*  (*People v. Braggs* (2022) 85 Cal.App.5th 809, 818 (*Braggs*); §§ 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv).)

Hatfield argues the presumption under subdivision (b)(2) of section 1172.1 applies to the specific sentence recommended by the CDCR.  He thus contends the court should have adopted the CDCR's recommendation to dismiss his prior serious felony because it did not find he was likely to commit a super strike.

3

Hatfield forfeited this issue because he failed to raise it in the trial court. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) Nonetheless, it is reviewable through Hatfield's claim of ineffective assistance of counsel, under which he must show (1) his counsel's conduct fell below an objective standard of reasonableness and (2) there is a reasonable probability he would have obtained a more favorable result. (*People v. Rices* (2017) 4 Cal.5th 49, 80.)

Hatfield's argument is based on an incorrect reading of section 1172.1. "[N]othing in former section 1170.03 or current section 1172.1 provides for a presumption in favor of the [CDCR's] *particular* recommended sentence. Rather, the statute provides for a presumption regarding recalling and resentencing a defendant, but not a presumption as to a particular sentence recommended by the [CDCR]." (*Braggs, supra,* 85 Cal.App.5th at p. 819.)

The opinion in *Braggs* was issued shortly after Hatfield's resentencing hearing.[4] The effectiveness of Hatfield's counsel therefore depends on whether there were any reasonable arguments contrary to *Braggs* before that opinion was issued. Hatfield raises several arguments, but none are convincing. First, the plain language of the statute does not require a different result, as the "presumption favoring recall and resentencing" (§ 1172.1, subd. (b)(2)) makes no reference to specific sentence recommendations from the CDCR. Similarly, subdivision (a)(1) of section 1172.1 provides the parameters for resentencing and instructs the court to "resentence the defendant in the same manner as if they had not previously been sentenced," without any mention of recommendations from the CDCR.

---

[4] Hatfield was resentenced on September 29, 2022, and *Braggs* was issued on November 30, 2022.

Second, "resentencing" in subdivision (b)(2) is not rendered surplusage because after recalling the existing sentence, the court is required to "resentence the defendant in the same manner as if they had not previously been sentenced," and "apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(1) & (2).)

Third, Hatfield's reliance on the legislative history is misplaced. There is no ambiguity in the statute, so our inquiry ends, and we do not consult extrinsic sources. (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*).)

Finally, Hatfield argues *Braggs* would lead to absurd results because the court would be constrained by the CDCR's particular recommendation if that was the only basis for resentencing, but it would not be constrained by that recommendation if there was a separate basis for resentencing. This argument is based on Hatfield's misreading of section 1172.1. The court is not constrained by the CDCR's particular recommendation regardless of the basis for resentencing.

Hatfield has not given a persuasive argument against *Braggs*, and we believe *Braggs* is correct. As a result, failing to argue a presumption in favor of the CDCR's particular recommendation did not fall below an objective standard of reasonableness, and it is unlikely such an argument would have produced a more favorable result. Ineffective assistance of counsel has therefore not been shown.

*B. There Was No Error Under Section 1385.*

Hatfield argues his deadly weapon enhancement attached to count one, his prior serious felony, and his prior strike should have been dismissed under section 1385 on two grounds. First, he claims dismissal was mandatory. This is a matter of statutory interpretation, which we review de

5

novo. (*Barron v. Superior Court* (2023) 90 Cal.App.5th 628, 635.) Second, he claims the failure to dismiss was an abuse of discretion. Review of this claim is deferential, and abuse is not shown unless the " 'decision is so irrational or arbitrary that no reasonable person could agree with it[.]' " (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490 (*Nazir*).)

Hatfield's arguments are primarily based on subdivision (c) of section 1385, which relates to enhancements. These arguments do not apply to Hatfield's prior strike, as that is not an enhancement. (*People v. Burke, supra*, 89 Cal.App.5th at p. 244.)[5] We will therefore address these arguments as they relate to the enhancements for the prior serious felony and deadly weapon, and then separately address the prior strike.

*1. Dismissal of the Enhancements Was Not Mandatory.*

Section 1385 provides in pertinent part as follows:

> (c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

---

[5]     We decline to depart from *Burke* as urged by Hatfield. Enhancement has a well-established technical meaning, and it is equally well established that the Three Strikes law is an alternative sentencing scheme, not an enhancement. (*Burke, supra*, 89 Cal.App.5th at p. 243.)

[¶] . . . [¶]

(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

Hatfield argues that any enhancement described in subparagraphs (B) or (C) must be dismissed because those subparagraphs use the phrase "shall be dismissed." This argument has been rejected by several cases because it improperly focuses on subparagraphs (B) and (C) in isolation. (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21 (*Lipscomb*); *People v. Anderson* (2023) 88 Cal.App.5th 233, 239–241, review granted Apr. 19, 2023, S278786 (*Anderson*); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–297 (*Mendoza*); *People v. Walker* (2022) 86 Cal.App.5th 386, 396–398.) These cases were not wrongly decided as Hatfield contends, and we agree with the following analysis:

> Section 1385(c)(2) provides that in determining whether to dismiss an enhancement 'under this subdivision,' the court must consider nine listed mitigating circumstances if proven by the defendant (§ 1385, subd. (c)(2)(A)-(I)), 'unless the court finds that dismissal of the enhancement would endanger public safety' (*id.*, subd. (c)(2)). That provision means that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances. (*Ibid.*) The 'shall be dismissed' language in section 1385(c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does not find that dismissal of the enhancement would endanger public safety. That interpretation gives meaning to the language in section 1385(c)(2) requiring the

court to consider whether dismissal 'would endanger public safety,' and it consequently avoids rendering that language surplusage. (*Mendoza, supra*, 88 Cal.App.5th at p. 296, fn. omitted.)

Hatfield's claim that the interpretation should change based on the latest amendment to section 1385 (Stats. 2022, ch. 58, § 15) is not convincing. He asserts the failure to remove "shall be dismissed" from subparagraphs (B) and (C) indicates the Legislature intended mandatory dismissal under these subparagraphs. But the Legislature also did not change paragraphs (1) and (2) of subdivision (c), so the analysis remains the same. Additionally, the history for the prior amendment of section 1385 (Stats. 2021, ch. 721, § 1) shows the Legislature rejected Hatfield's interpretation (*Anderson, supra,* 88 Cal.App.5th at pp. 240–241, review granted; *Lipscomb, supra,* 87 Cal.App.5th at pp. 19–20), and there is no indication the Legislature intended to depart from that in the latest amendment.

Accordingly, subparagraphs (B) and (C) do not mandate dismissal when there is a finding of danger to public safety. Such a finding was made in this case as discussed below, so dismissal was not mandatory.

### 2. *No Abuse of Discretion Regarding the Enhancements.*

Hatfield argues the trial court abused its discretion by declining to dismiss the deadly weapon enhancement attached to count one, his prior serious felony, and his prior strike. To establish an abuse of discretion, Hatfield must show the trial court's " 'decision is so irrational or arbitrary that no reasonable person could agree with it[.]' " (*Nazir, supra,* 79 Cal.App.5th at p. 490.)

Hatfield first claims he was no longer a danger to public safety because of the passage of 21 years, his conduct in prison, and his health. The court relied on these factors in dismissing the deadly weapon enhancements

attached to counts two through seven but declined any further reduction. It found Hatfield had taken minimal efforts to address his alcohol and drug addiction, and he had not engaged in any meaningful treatment. This was based on his completion of minimal self-help programming and his 17 prison rule violations, which include possession of manufactured alcohol as recent as 2019 and testing positive for controlled substances six times. Hatfield's addiction is related to his offenses, as he admits to being under the influence when he committed them and to supporting his habit by stealing.

The trial court also found Hatfield had an increasing criminal history, which was based on the following: burglary and theft as a juvenile in 1990; driving under the influence in 1992; receiving stolen property, vehicle theft, possession of a controlled substance, and possession of a weapon in 1994; vehicle theft in 1995; first degree burglary in 1996; and possession of a controlled substance and weapons in 1997.

The trial court further relied on the charged crimes, which were seven counts of residential robbery occurring in three separate incidents. The first was on September 29, 2001. Hatfield was armed with a knife, the codefendant with a hatchet, and they entered the victim's home and demanded drugs, money, and jewelry. Three other adults and four children were also in the home. Hatfield obtained methamphetamine from the victim and then fled because someone called the police.

The second incident occurred the next day. After being refused entry, Hatfield and the codefendant entered the victim's home while she was taking a shower. One of them held a knife to the victim's throat and threatened harm if she did not give them money. A second victim arrived during the robbery, and the pair was held captive for three hours while Hatfield and the codefendant ransacked the home, stealing money, a car, a rifle, and other

9

items.  Two three-year-old children were also present, and a phone line had been cut.

The third incident was on October 10, 2001.  It involved four victims, some were awakened and ordered out of their rooms, and one was bound with duct tape.  Hatfield made threats and used a knife during the robberies, as well as to get a third party to make a deceiving phone call that allowed entry into the home.  A victim's cell phone was taken apart and phone lines were cut.  Money, jewelry, a car, and other items were taken.

These crimes were violent and dangerous, there were multiple victims, and there was evidence that they were planned and led by Hatfield.  They occurred over a short period of time while Hatfield was on parole, and they began when he had been out of prison for only 27 days.

Based on Hatfield's increasing criminal activity, the short periods of time between his crimes, the violent nature of the charged offenses, and the inadequate attempts to rehabilitate, there was a sufficient basis to determine that further reduction of Hatfield's sentence was likely to result in physical injury or other serious danger to others.  As such, no abuse of discretion has been shown on this ground.

Hatfield also claims the trial court erred in finding the following mitigating circumstances did not apply:  enhancements resulting in a sentence over 20 years (§ 1385, subd. (c)(2)(C)); connection to childhood trauma (§ 1385, subd. (c)(2)(E)); and a prior conviction over five years old (§ 1385, subd. (c)(2)(H)).[6]  However, the trial court was not required to give these mitigating circumstances great weight based on the finding of danger to the public.  (§ 1385, subd. (c)(2); *Mendoza, supra*, 88 Cal.App.5th at p. 296.)

---

[6]    Hatfield did not forfeit this issue as Respondent suggests because he relied on these mitigating circumstances in his resentencing brief.

10

That finding justifies the refusal to dismiss the enhancements regardless of whether these particular mitigating circumstances may have otherwise applied, so no abuse of discretion has been shown on this ground either.

### 3. *No Abuse of Discretion Regarding the Prior Strike.*

In assessing whether to dismiss a prior strike, the court " 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Johnson* (2015) 61 Cal.4th 674, 689.) The circumstances justifying departure from the Three Strikes law must be extraordinary, and an abuse of discretion in this regard is even more extraordinary. (*People v. Vargas* (2014) 59 Cal.4th 635, 641.)

The court found that Hatfield fell squarely within the Three Strikes law for many of the same reasons it found him to be a danger to public safety. This was a sufficient basis to decline dismissing Hatfield's prior strike, and no abuse of discretion has been shown.

## III.  DISPOSITION

We affirm.

11

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.